# Cummings's Appeal.

1. Inadequacy of price alone in a contract of sale is not a ground of relief.
2. In this case evidence held insufficient to cancel deeds on allegation of fraud and misrepresentation.

January 24th and 25th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Appeals from the Court of Common Pleas of *Snyder county:* In Equity: No. 316, 317, to January Term 1870.

On the 25th of September 1865, two bills were filed against A. S. Cummings and Louisa E. Cummings his wife; one by Calvin R. North and Annie R. North his wife; the other by John P. Richter. The bills were similar.

The first set out that William H. Richter, a brother of Mrs. North, died on the 22d of August 1856, under the age of twenty

one years, intestate, unmarried and without issue, seised in fee of a tract of land in the Isle of Que in Snyder county, containing 110½ acres, which land had been inherited from his father, Peter Richter; that the decedent left to survive him, his mother, Elizabeth Richter, and brothers and sisters, viz., Harriet, wife of H. P. Hottenstein, Louisa, one of the defendants, Anne, one of the plaintiffs, who intermarried with the other plaintiff since the decedent's death, Martha and John P. Richter, on whom the said land descended, subject to the mother's life estate; that administration of the decedent's estate was granted to John P. Richter and A. S. Cummings, who, at May Term 1861, petitioned the Orphans' Court for an order of sale of one lot of 1 acre, and another lot of 11 acres, part of the land of the decedent, for the payment of debts, accompanied by an inventory showing the personal estate to be $429.30, and the debts to be $3050; that an order of sale was accordingly issued, to which the administrators returned that they had sold the one acre to Elizabeth Richter, the mother, for $800; and upon a further order of sale, the administrators returned that they had sold the whole of the remainder of the tract, to the same Elizabeth Richter for $7510; that exceptions to the sale were filed by one of the heirs, which were afterwards withdrawn, the sale confirmed, and one of the administrators, John P. Richter, ordered to deliver a deed to the purchaser, which he did; that at the death of the decedent, A. S. Cummings, the defendant was his guardian, and as such owed him $1017.91, which was entered as a lien against Cummings; that Mrs. North (plaintiff) had purchased the interest of her sister Harriet in the decedent's estate, thus becoming the owner of two shares; that about the 14th of June 1862, and before her marriage, Mrs. North, by reason of misrepresentations made to her by both of the defendants, and by Mrs. Richter the mother, conveyed to Mrs. Cummings her two undivided fifth parts in the estate of her brother, W. H. Richter, for the consideration of $2000, and received from the defendants a deed to Mrs. North and John P. Richter for a tract of land in the state of Iowa, containing 160 acres, for the consideration of $3000; that Mrs. North had never seen the land, and "trusted and entirely confided in the representations of the said A. S. Cummings and Louisa his wife, and Mrs. Elizabeth Richter, who represented the said tract to be worth $5000, and that it would sell at any time for that sum;" that since, the plaintiff had been informed it was not "worth more than from $6 to $8 or $10 per acre;" that A. S. Cummings, the plaintiff at the time of the sale, represented to the plaintiffs that he had seen the land; that the plaintiffs were married on the 5th of January 1865. The bill also set out another conveyance as having been made by plaintiffs to defendants, not material to the issue. The bill concluded:

"All which matters and things, or so much thereof as is material, your petitioners believe they are now able to prove by living

witnesses, but forasmuch as disputes may arise concerning the said premises, after your petitioners' witnesses are dead and the rights of your petitioners may be thereby defeated, and in order that the said deed from your oratrix to the said Louisa Cummings, of the 14th of June 1862, for two shares in the estate of the said William H. Richter, procured by false representations as aforesaid, upon which your oratrix entirely trusted and confided, may be cancelled by order of this court, or ordered to be surrendered to your petitioners, and the record of the recording of the same cancelled or annulled, so that your oratrix may be placed in all things so far as relates to the said deeds of the 14th of June 1862, as she was before the execution thereof, * * * and in order that your oratrix may surrender and return to the said A. S. Cummings and Louisa Cummings the deed for the land in Iowa," prayed for a subpœna to defendants to answer the bill, and to show cause why the prayer of the bill should not be granted, and for further relief.

The defendants answered, amongst other things, as follows :—

* * * That Mrs. North was entitled to two shares in her brother William's estate which " On the 11th day of June 1862, for a valuable consideration, the plaintiff conveyed by lawful deed to said Louisa E. Cummings, one of defendants, in fee simple. That defendants nor either of them, nor did Mrs. Elizabeth Richter (mother of said Anne) make any misrepresentations or false statements in regard to the tract of land described in plaintiff's bill in the state of Iowa, which was conveyed by defendants to the said Anne long before her marriage to said Calvin B. North, nor was any persuasion used by them to induce her to make the purchase; that she made the purchase with her own free will and accord, and that the whole transaction was fair and bonâ fide." * * *

John P. Richter, in his bill, besides making the general allegations as in the other bill, averred, that Elizabeth Richter, as purchaser of the real estate, gave to him as administrator a mortgage for $3510, being the amount remaining of the proceeds of sale of W. H. Richter's estate, after the payment of his debts, the mortgage being payable at the death of Mrs. Richter. He also averred that after the death of William, " by reason of certain false and wicked representations made by the said A. S. Cummings and Louisa his wife, and also by Mrs. Elizabeth Richter, your orator was induced to sell his undivided interest in the estate of the said William H. Richter to the said A. S. Cummings or Louisa his wife, the deed being made to her," * * * dated the 14th of June 1862, and " in consideration therefor," the defendants conveyed to him and Mrs. North the tract mentioned in her bill, " for the consideration of $3000," and " falsely and intentionally" represented to him that the tract was worth $5000 ; the plaintiff trusting to them believed that it was worth at least $3000 ; that he had since become convinced that it " was not worth more than from

[Cummings's Appeal.]

$6 to $8 per acre," and that a share of William H. Richter's estate was worth $1600. The bill concluded, "In order, therefore, that the said deed from your orator to the said A. S. Cummings or his wife, Louisa Cummings, may be corrected, revoked and annulled, and that he may in all things be placed in the same situation that he was prior to the execution and delivery thereof, your orator humbly prays your honors that a subpœna in due form of law may issue against the said A. S. Cummings and Louisa Cummings, commanding them to answer the bill, and that a rule of this honorable court may issue under the seal of this court commanding the said A. S. Cummings and Louisa Cummings to appear on some day certain, to show cause why the deed of your orator to the said Louisa for his interest in the estate of said William H. Richter, deceased, should not be surrendered and destroyed, upon your orator surrendering to him the deed whereby he received from the said A. S. Cummings and wife, the said land in Iowa, and be further and otherwise relieved in the premises according to equity and good conscience."

To this bill the defendants amongst other things answered: * * * "And as regards the charge of fraud set forth in plaintiff's bill in relation to the tract of land situate in the state of Iowa, they respectfully deny that they or Mrs. Elizabeth Richter (mother of plaintiff) falsely and intentionally represented to plaintiff that said tract of land was worth five thousand dollars, nor did they or either of them make any false representation or use persuasion to induce plaintiff to purchase said tract of land or any part of it, or to sell to his said sister Louisa E. Cummings his interest in the estate of his brother William H. Richter, deceased, but that the whole transaction between defendants and plaintiff in regard to said sale and purchase was fair and bonâ fide, and that the deed of the 14th of June, A. D. 1862, from plaintiff to said Louisa E. Cummings was intended to convey to her his entire interest in the estate of his said deceased brother, William H. Richter." * * *

No replication was filed; Samuel Alleman, Esq., was appointed examiner and master. Before him John P. Richter testified that Cummings said the Iowa land was worth $5000 and was increasing in value every day; Cummings had been to Iowa several times, said he did not want to part with the land then; he made old Mrs. Richter believe he was going west, and then she insisted that witness and Mrs. North should exchange William's farm for the land in the west; witness knew nothing of its value except as represented by Cummings. Witness testified to particular facts given by Cummings to induce him to believe that the Iowa land was of great value; old Mrs. Richter was present at the conversations with Cummings and insisted upon the exchange. On cross-examination witness said that Cummings showed him affi-

davits from Iowa stating the land was worth $5000, and told witness and Mrs. North that they should go out and examine the land; there was no money paid for the land, it was an exchange.

Depositions of witnesses for plaintiffs were taken in Iowa in reference to the value of the land there. The valuation fixed by most of the witnesses was from $9 to $10 per acre; some witnesses fixed it as low as $7 per acre, a few at $12, and one at $20.

Witnesses on the part of the defendants, valued the land at $5500, some at $3000, and others fixed valuations between those sums; they testified also that the land was productive and increasing in value.

The defendants gave evidence also by old Mrs. Richter and Martha Ulrich, a sister, that the plaintiffs had desired to make the exchange of their interest in William's estate for the Iowa land; also evidence tending to prove that the defendants had not urged the plaintiffs to make the exchange, and that there had been no misrepresentation or improper influence to induce the plaintiffs to exchange.

There was very little evidence on either side in reference to the allegations in the bills, except as to the value of the Iowa land. The substance of the evidence is stated in the opinion of Mr. Justice Agnew.

In his report, which included both cases, the master said : * * *

" It is alleged in complainants' bill and not denied in respondents' answer, that complainants never saw the land in Buchanan county, Iowa, and that they trusted and confided in the representations of the respondents, in whose family Mrs. North was then living. It is also alleged in complainants' bill and not denied in respondents' answer, that respondents represented the tract of land in Buchanan county, Iowa, to be worth five thousand dollars, and that it would sell at any time for that sum. The evidence in the case shows that Miss Annie Richter was living in the family of Dr. Cummings—that he attended to all the business of the family, was the friend in whom all parties naturally trusted and confided, and as the father was dead, was so far as the evidence is concerned the only male person about the house having the control of affairs. The evidence also establishes that a share in the estate of William H. Richter, deceased, was valued by Mrs. Cummings, one of the respondents, at the sum of sixteen hundred dollars.

" From a full, fair and careful examination of all the evidence, I find that in June 1862, at the time of the execution of the deeds, the tract aforesaid was not worth more than from ten to twelve dollars per acre at the outside, and taking it at its highest average value, it would amount only to the sum of nineteen hundred and twenty dollars. This would seem a most fabulous increase in its value from the year 1856, when it was purchased by Mrs. Cum-

[Cummings's Appeal.]

mings from John Hodgdon for the sum of two hundred and seventy-five dollars—an increase of sixteen hundred and forty-five dollars, in less than six years; which is certainly, to say the least of it, a very rapid increase for farm land with no more valuable improvements on it, and without any extra advantages of location, than the evidence shows in relation to this property.

"Miss Annie Richter, now Mrs. North, and John P. Richter, received the western tract, and in consideration transferred to Mrs. Cummings four-fifths of the estate of William H. Richter, deceased, which according to the testimony was worth at sixteen hundred dollars per share, the sum of six thousand four hundred dollars. It is true mere inadequacy of consideration is not of itself sufficient to authorize relief in equity, but where confidence is reposed in the one party by the other, on account of the peculiar relationship existing between them, and the party is misled by such misplaced confidence, this would be no inconsiderable ground for relief. And I am clearly of opinion that the evidence and pleadings fully establish that complainants were induced to make this exchange by the confidence which they reposed in respondents and in the belief of the truthfulness of the matter they stated to them of the value of this western land. * * *

"But in addition to the inadequacy of price as proven, we have the evidence that complainants never saw the land in Iowa; that they confided in the statements and representations of the respondents A. S. Cummings and Louisa E. Cummings his wife, as to its value; that the doctor had seen it and knew all about it; that he represented it to be worth five thousand dollars; that it would sell for that amount at any time, which I find from the pleadings and testimony, as a question of fact, was not the case. Now equity requires a party to make that good which he represents, and holds that no party shall gain by his own wrong or falsehood. Besides, these cases do not, in my opinion, entirely depend upon the single question of consideration; that is only one of the many questions which have been raised.

"The respondents upon the argument of these cases, after the taking of the evidence, contended that the complainants are not entitled to the relief prayed for, on the ground that the evidence disclosed the fact that the only interest which they had, was in the mortgage of the 20th of August, A. D. 1862, from Mrs. Elizabeth Richter, for the unpaid part of the purchase-money, and that complainants had no interest in the Isle of Que farm. For the purpose of deciding these cases, it is not necessary to decide what interest they had in that farm. Mrs. Elizabeth Richter, on the 14th of June 1862, at the time of the execution of these alleged fraudulent deeds, had become the purchaser of the Isle of Que farm. The administrators had not at that time executed or delivered a deed to her. This was not done until the 20th of August

following. And, besides, both parties treated the conveyances of the 14th of June, A. D. 1862, from the complainants to the respondent Mrs. Cummings as a transfer of their interests in the estate of William H. Richter, deceased. And again, in 1865, A. S. Cummings and wife so regarded it, at the time they got Mrs. North, after her marriage, to execute a deed in her maiden name to Mrs. Cummings for the same property, so that I do not see how in equity and good faith I can view these papers differently from what the parties themselves viewed and treated them, and that was as a conveyance by the complainants to Mrs. Cummings of their entire interest or shares in the estate of William H. Richter, deceased. Besides, this question is not raised by the pleadings, and therefore I do not see that it is necessary for the decision of the main question, to wit: were the conveyances of the 14th of June 1862, from the complainants to Mrs. Louisa E. Cummings, obtained in such a manner as to make them void in equity, and, if so, are the complainants entitled to the relief prayed for? What interest the complainants had in the Isle of Que farm or in the estate of William H. Richter, deceased, is not the main question.

"There can be no doubt from the pleadings and evidence that Miss Annie Richter, previous to the 14th of June 1862, had two shares in the estate of said decedent, and that John P. Richter had a like interest, and as a question of fact I so find it from the pleadings and evidence.

"From the foregoing, and the evidence and pleadings, I am clearly of the opinion that the complainants, in both these cases, are entitled to the relief prayed for."

He decided:—

1. That deeds dated June 14th 1862, from John P. Richter and Annie Richter (now North) to Louisa E. Cummings for two-fifths of the estate of William H. Richter, deceased, be cancelled and annulled.

2. That the deed of June 14th 1862, from A. S. Cummings and wife to John P. Richter and Annie Richter for the tract of land in Buchanan county, Iowa, be cancelled and annulled.

The defendants filed a number of exceptions to the master's report, which were overruled by the court; Woods, P. J., delivering the opinion in North's case, in concluding which, he said:— * * *

"In the case before us we have the fact that the defendants falsely asserted the value of the land to be much greater than it actually was. That the defendants had seen the land and knew all about it; but that the plaintiff never had seen it, knew nothing about it, and had not the means of ascertaining correct information on the subject and was induced to make this bargain by means of these false representations on the part of the defendants. Under this state of facts equity would relieve the plaintiff and rescind

[Cummings's Appeal.]

this contract on account of the fraudulent manner in which it was obtained, irrespective of the other considerations in the case. We see then that the plaintiff is entitled to the relief asked for in any view we can take of the case, and we think the master was abundantly justified by the evidence in the conclusion of facts at which he arrived. We have not taken up the exceptions to the master's report seriatim as they covered the whole case and we have considered it as a whole. Under the bill and pleadings and evidence we can do no more than simply order the deed from Mrs. North to the defendants to be given up and cancelled and the one from Mrs. Cummings to be returned, and that the whole agreement which led to the giving of these papers be declared void. This alone would perhaps be doing very incomplete justice to Mrs. North, as she would be only receiving the interest in the estate of William H. Richter, at the very inadequate price for which it sold; but it appears to us that this is the extent to which we can go under the pleadings and evidence. But this not to preclude a future application for a more complete remedy and relief in the matter and manner in which the sale of the said real estate of William R. Richter was made and transferred to Mrs. Cummings and from showing the real and actual value of said estate.

"And now, to wit, September Term 1869, this cause came on to be heard at this term, and was argued by counsel, and thereupon upon consideration thereof, it is ordered, adjudged and decreed as follows, to wit: That the deed from Annie Richter, now Mrs. North, to Mrs. Louisa E. Cummings, dated on the 14th day of June 1862, for two-fifths of the estate of William H. Richter, deceased, be given up and cancelled, and that the record of the same in the recorder's office in this county be cancelled and the same declared void; and that the deed from Mrs. L. E. Cummings to Annie Richter, now Mrs. North, and John P. Richter for 160 acres of land in Iowa, and dated June 14th 1862, be cancelled and given up to Mrs. Cummings so far as the interest of Mrs. North is concerned in said deed, and further the defendants are ordered to pay all the costs of this proceeding."

A similar decree was made in John P. Richter's case.

The defendants appealed to the Supreme Court in both cases, and assigned the decrees for error.

*J. C. Bucher* and *G. F. Miller*, for appellants.

*A. C. Simpson*, for appellees.

The opinion of the court was delivered, February 9th 1871, by

Agnew, J.—These cases relate to the same transaction, and depend mainly on the same evidence, and may therefore be considered together. The conclusions of the master in his report

bear an enormous proportion to the modicum of evidence from which they have been drawn, and seem to have misled the court into theories more labored than real. The whole case is over-wrought, and it is indeed surprising to perceive how great a fire has been blown from the few sparks of evidence to be found. I express the unanimous opinion of the court in declaring that we cannot discover the strong proof of fraud, found by the master and the court, in the few faint glimmers of evidence to be seen in the testimony. The great fact upon which the charge of fraud is based, is the alleged misrepresentation of the value of his Iowa land by Dr. Cummings. Let it be conceded, however, that he represented its value at $5000, yet the very affidavits which it is said he exhibited, and were the tokens of his fraud, by means of which he effected it, do not establish the representation. On the contrary, they contradict it by exhibiting a valuation of $3000 only: the very sum stated in the deed for the land from Dr. Cummings and wife to John R. and Annie R. Richter, dated the 14th day of June 1862. It is true, the witnesses say, if they owned the land they would not take less than $5000 for it. Of the five witnesses, only three speak of the value in money, the other two merely stating the actual products of the land, and its location and quality; while it is important to notice that they have not been contradicted in their statements of facts. Tested then by the affidavits themselves and the deed, it is evident the property was not exchanged at the price of $5000. But when we come to the testimony of value what do we discover? Nine witnesses of the defendants give an average value of $4417, and four in a different form state an average of $3375; while one witness of the plaintiffs states the value of $20 per acre, or $3200. Now either these witnesses, afar off in Iowa, have conspired with the doctor in his fraud, or have been suborned to falsify, a thing incredible. But if we take even the average valuation of twenty-five of plaintiffs' witnesses, at $10.50 per acre, we have the sum of $1680 for the tract. Of all matters of belief, none, perhaps, is more uncertain than opinions of value; and therefore mere inad-equacy of price is not considered a ground of relief. This is admitted, but in order to help out the case, the master has found (approved by the court below) a quasi confidential relation, derived from the merest shadow of evidence, not given by the plaintiffs, but extracted from the cross-examinations of Mrs. Richter, the mother, and Mrs. Ulrich, the sister of John P. and Annie R. Richter. It is all contained in these words: "Annie was living also at Dr. Cummings's when the exchange was made, in Mrs. Cummings's house. We were all living there together. The doctor attended to the business of the family." To this I may add the testimony of Frederick Richter, not quoted by the judge in his opinion. He says: "Annie lived in the doctor's family

many years. The doctor mostly attended to the business of the family, as far as I knew. I can't tell particularly whether he attended to Annie's business. The doctor was most generally the adviser. From what I could find out, the doctor controlled the widow a good deal." The plaintiffs gave not a tittle of evidence to show control, or confidence, or agency, or any other matter tending to prove influence on the part of Dr. Cummings over the mind of Annie R. Richter; while as to John P. Richter, an elder brother and married man, this influence is not even alleged, and yet he is a party to the same exchange; a transaction which took place in the presence of the family, long agitated, and concurred in by all. And what is still more to the point, such an undue influence, or confidential relation by agency or otherwise, is not even alleged in the bills of the several plaintiffs, the only ground averred in the bills being that the plaintiffs were induced to make the exchange by reason of certain false representations, relied upon and confided in by them. The master, however, proceeds to heighten the color of the bill by calling the representations *wicked*, as well as false, and the court say *they are not denied*, in the face of the answer which avers that neither the defendants nor Mrs. Richter made any misrepresentations or false statements in regard to the Iowa land, nor was any persuasion used by them to induce Annie to make the purchase, and that she made it of her own free will and accord, and that the whole transaction was bonâ fide. Now upon this slender foundation is built the fabric of a theory which gives to Dr. Cummings "unlimited control" over Annie R. Richter, that he sustained toward her the " confidential relation of an agent," and that she reposed in him " unlimited confidence," and by means of this he committed upon her a gross and unmitigated fraud. Unsustained as it is, either by the bills of the plaintiffs or the evidence, it is contradicted on the other hand by the witnesses of the defendants present at the transaction, and by all the facts of the case. Mrs. Richter and Mrs. Ulrich deny it expressly. The evidence shows that Wm. H. Richter, from whom the property descended, died largely in debt, and that the whole family were anxious that some member of it should buy it in, and not let it pass into the hands of strangers, but they were unable to do it. John asked his sister, Mrs. Cummings, to buy it, but she said she could not unless she could give Western land in exchange. It was a matter of consultation among all the family, and finally was consummated between Dr. Cummings and John and Annie, in the presence of Mrs. Richter and Martha, a sister (Mrs. Ulrich), both of whom testify to the fairness of the transaction.

There the matter rested for two years and a half, all content, and no murmur of complaint; Mrs. Richter and Martha in the meantime visiting the land, and bringing back a favorable report,

upon which Mrs. Cummings offered to trade back with John and Annie, but they declined, expressing themselves satisfied with their bargain. So the case stood when Annie married Calvin B. North, and in a few short weeks she came from her own room to that of her sister, with tears in her eyes, to tell her that Mr. North having found out the exchange was dissatisfied, and she must exchange back. Now out of such a case as this it requires great powers of belief to conjure up from such slender materials, a stupendous fraud, a confidence abused, and trust misplaced.

Not less strained is the argument to sustain the double value of the shares of John and Annie Richter in their brother's estate. The master estimates a single share at $1600, founded on a statement of Mrs. Cummings made in 1858 or 1859, two or three years before the settlement of the estate and sale of the property by order of the Orphans' Court; while the evidence shows that a share was but $702 in money, payable at the death of Mrs. Richter, a healthy woman then of fifty-eight years of age. He argues that because the administrator's deed was not delivered at the time of the exchange, it must be presumed that John and Annie sold an interest in land valued at $1600. But the administrator's account had been settled, the schedule of debts presented, the sale made and confirmed by the Orphans' Court, and all the proceedings had previous to the exchange, to show that a large amount of indebtedness remained to be paid, besides the costs and expenses of the sale, resulting in the final sum for distribution of but $3510, for which the mother gave her mortgage as the purchaser at the sale, payable at her own death, she being entitled to a life estate. This gives the share of each of the five brothers and sisters at $702. Under these circumstances, to state the value of the share at $1600, when the exchange was completed in June 1862, requires extraordinary credulity, or some invention. But let us turn to view the case from a different stand-point. Dr. A. S. Cummings, whose wife was an owner of a share in her brother's estate, is admitted to be a business man, and has ordinary business intelligence. It is said he attended to the business of the Richter family, and if so must have known the state of their property. He knew of course of the settlement of the account, the sale, confirmation and conversion of the estate into money, the mother's life estate, and the number of heirs, of whom his wife was one, and the debts against the property. He knew, therefore, that when the balance $3510 came to be distributed, each share would be $702 instead of $1600, and what is more to the purpose, he knew that this share bore no interest, and was not payable till the death of his wife's mother, a healthy woman, with a then expectation of life of from fifteen to twenty years. Living for but fifteen years, the value of a share, discounted at six per cent. per annum, would be but $370. Now allowing him but the ordinary

[Cummings's Appeal.]

shrewdness of the most ordinary business man, what motives had he for concocting a long-considered scheme of fraud to exchange a farm worth in 1862, according to the average value of the plaintiffs' witnesses, $1680—a then present and available estate, growing in value day by day, with the increase of population and improvements surrounding it, for a prospective money claim worth then but $1480, without capacity of growth or increase, beyond the discount, and dependent on the life of another for the time of its enjoyment? To perceive in all this a motive, for a long-digested scheme of fraud, beginning with affidavits taken in 1861, a year before the exchange, and prosecuted through a close confidential relation, and by control and undue influence extending to all the members of the Richter family, is rather beyond our comprehension, and requires an exuberance of belief not possessed by us. We are all of opinion there is no sufficient ground to sustain the finding of the master and the decree of the court.

The decree of the court below, in each case, is therefore reversed, and the bills dismissed at the costs of the appellees, in each case respectively.