# Kramer, Appellant, *v.* Dinsmore et al.

### [Marked to be reported.]

*Partnership—Contract under seal—Ratification.*

An agreement under seal executed in the name of a partnership by one of its members without precedent special authority, is ratified by the firm accepting the benefits of the agreement. Hart v. Withers, 1 P. & W. 285, distinguished.

A partner may adopt and ratify by parol a contract under seal executed by his copartners in the name and for the use of the firm.

*Agreement to convey property bought at sheriff's sale.*

A partnership engaged in the banking business held judgments against one Kramer, on which it had issued executions and levied on some of Kramer's real estate. Kramer presented a petition to open the judgments and in the meantime the executions were stayed. Before the application to open the judgment was heard, one of the partners without special authority entered into an agreement under seal with Kramer in the name of the firm, by which Kramer agreed to discontinue the proceedings to open the judgment, while on the other hand the firm was to sell Kramer's real estate levied upon, at sheriff's sale and buy it in, but, at any time within two years, on tender of the amount bid, was to convey the land to Kramer's wife. Kramer's application to open the judgment was withdrawn; the pending litigation ceased, and the bank seized and sold other real estate of Kramer. At the same time the bank sold at sheriff's sale the land referred to in the agreement and bought it for $100, its value being $4,000. Within two years after the sale Mrs. Kramer tendered the amount of the bid and demanded a deed. *Held*, that she was entitled to a conveyance of the land.

Argued Oct. 5, 1892. Appeal, No. 96, Oct. T., 1892, by plaintiff, Sarah Kramer, from decree of C. P. Jefferson Co., May T., 1889, No. 2, dismissing bill in equity filed against M. J. Dinsmore et al., trading as the Mahoning Bank. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill to enforce specific performance of contract to convey land.

The case was referred to J. A. Scott as master, from whose report it appeared that in 1885 the Mahoning Bank, a partnership composed of a large number of shareholders, held several judgments against George Kramer, one of the original shareholders of the bank and husband of complainant. Execution had been issued on these judgments and certain portions of Kramer's real estate levied upon, when he presented his petition to the court praying that the judgment should be opened. Rules to show cause were granted, and the executions were stayed until the rules should be disposed of. While the rules were pending Hon. Harry White, one of the directors of the bank, entered into an agreement under seal with Kramer, which was as follows :

"Article of agreement made and concluded this 21st day of April, A. D. 1886, by and between Hon. Harry White, of Indiana, Pa., as representative of the board of directors of Mahoning Bank, of the first part, and George Kramer, of Henderson township, Jefferson county, Pa., of the second part.

"Whereas, M. J. Dinsmore, cashier, in trust for said Mahoning Bank, caused to be entered three several judgments against George Kramer and W. E. Bell, in the court of common pleas of Jefferson county to Nos. 186, 187 and 188 of September term, 1877. That afterwards said plaintiff caused writs of sci. fa. to be issued upon said judgments to Nos. 59, 60 and 61 of Dec. T., 1882, for the purpose of reviving and continuing the lien thereof. That said Geo. Kramer filed affidavits of defence in Nos. 59 and 60. That a judgment by default was entered Oct. 3, 1885, to No. 61 of Dec. T., 1882, for $16,590. That a fi. fa. to No. 42, Dec. T., 1885, was issued thereon and the personal property of said Geo. Kramer was sold by the sheriff and a levy made upon said Kramer's real estate situated in Henderson township, Jefferson county, Pa., containing about 170 acres. That afterwards said. Geo. Kramer presented his petition to the said court of common pleas of Jefferson county to have said judgment opened for the reasons therein set forth. And whereas, the said parties, viz., Hon. Harry White as representative of said directors of Mahoning Bank and said George Kramer are desirous of settling and adjusting amicably all matters in variance between them.

" Now this agreement in consideration of said settlement and for the purpose of fully adjusting all differences witnesseth as follows, viz. : .

" 1. The said M. J. Dinsmore, cashier, the plaintiff, by said Hon. Harry White, as representative aforesaid, agrees to enter a credit upon judgment No. 61, Dec. T., 1882, for the sum of Forty            hundred and            dollars as of date of Jan. 12, 1882, being the amount realized by sale of defendant's real estate in Clearfield county, less the costs, etc., and judgment of revival this day to be confessed to Nos. 59, 60 and 61 of Dec. term, 1882.

" 2. That upon a discontinuance of the proceedings to open the said judgment by George Kramer, the said plaintiffs agree to issue a writ or writs upon said judgment at the earliest possible time thereafter and sell the said real estate of said George Kramer, and said Hon. Harry White as the representative of said bank agrees to purchase the same, provided said farm is not bid by some other party to more than said White considers it is reasonably worth, and to hold the same, allowing said Geo. Kramer and his wife, Sarah Kramer, to live upon said farm for the period of two years from the date of the purchase, with the privilege to said Sarah Kramer of purchasing the same upon the following terms, viz.: That at any time within the two years, if said Sarah Kramer shall pay or cause to be paid to said Hon. Harry White or said bank the amount said White bid for said farm together with the interest thereon, then said bank through its representatives agrees to convey in fee simple by sufficient deed the above mentioned farm to said Sarah Kramer, or to such person or persons as she may name.

" 3. Should said Sarah Kramer be unable to pay all of said bid within said two years, then if said Sarah Kramer shall pay at least one half of the amount so bid by said Hon. Harry. White together with interest on the same, then the time for paying the balance of said bid shall be extended for the further period of one year, and if at the expiration of said two years no purchase money is paid as herein provided, then said Kramer agrees to surrender up the possession of said farm in as good condition as it now is in, reasonable wear and tear excepted.

" 4. That if said Hon. Harry White, on behalf of said bank,

should sell within the two years aforesaid the land he bought at sheriff's sale in Clearfield county, Pa., Jan. 12, 1882, as the property of said George Kramer and W. E. Bell, for a sum sufficient to realize the debt, interest and costs of judgments. Nos. 186, 187, 188 and 189, of Sept. T., 1877, in the court of common pleas of Jefferson county from Nov. 11, 1881, to date of said sale, together with such costs as may have been put upon said judgments since Nov. 11, 1881, and also expenses paid by the said bank about said lands, in taxes, litigation about title or in an effort to make sale of said lands, and any expenses necessarily incurred by said bank about said Clearfield lands, then the said Hon. Harry White, in behalf of said bank, if he purchases at the sheriff's sale to be made as aforesaid the said farm of George Kramer, will convey the same to said Sarah Kramer or any person or persons she may name, by a sufficient deed or deeds, this provision to have no effect if the said Hon. Harry White or said bank cannot within said two years sell said Clearfield lands so as to realize the amounts aforesaid.

" 5. It is further agreed that should said George Kramer or Sarah Kramer make sale of any building lots in and about the station of Kramer on the B. R. and P. railroad the said Hon. Harry White or said bank agrees to make deed or deeds to the purchaser or purchasers thereof, upon the payment to said White or said bank the purchase money thereof, which sum or sums of money so to be paid shall be a credit upon the amount of purchase money hereinbefore agreed to be paid by said Sarah Kramer for said farm.

" 6. Said George Kramer in consideration of above stipulations and agreements hereby discontinues his rules to open said judgment, and this day fully settles all differences of whatever nature or kind between him, said Kramer, and said bank, and withdraws his affidavits of defence filed as above stated and agrees to a revival of said judgments as per revival this day signed."

On the same day that the agreement was executed, Kramer signed amicable confessions of revival in the judgments, Nos. 59, 60 and 61, Dec. T., 1882. In May, 1886, execution was issued and the farm in controversy and certain lots and houses in Big Run were levied upon and sold by the sheriff to defendants. The farm in controversy was sold for $100.

The other facts in the case were reported by the master as follows:

" On December 16, 1886, the petition of Hon. Harry White, on behalf of himself and his associates in the said bank, was presented to court, asking that the sheriff's sale of said farm be set aside and that the said bid of $100 be stricken from the record, said petition alleging that at the time of the making of the contract with Kramer, the understanding and agreement between the parties was that the said farm was to be bid up to its full value, which was agreed to be not less than $4,000; that Kramer's attorney, H. C. Campbell, Esq., wrote said contract, and that it was left in his possession with the understanding that he would within a reasonable time send a copy thereof to said Hon. Harry White, at Indiana, or to the cashier of said bank, or hand a copy to W. F. Stewart, Esq., the then attorney of the plaintiffs at Brookville; that said copy was not furnished to either of the parties named until a considerable time after the sheriff's sale; that said White could not be present at the sheriff's sale by reason of having held court at Indiana, and that he thought Mr. Stewart, plaintiff's attorney, had said copy and would be governed thereby in conducting said sale; that by reason of Mr. Stewart not having said copy or any knowledge of said contract, the property was bid off for the sum of one hundred dollars, instead of being bid to its value according to the terms and understanding of said contract.  A rule to show cause was granted on the petition, depositions were taken and the case argued, and on March 15, 1887, the rule was discharged by the court.

" On Jan. 20, 1887, W. R. Depp, for Mrs. Sarah Kramer, tendered to M. J. Dinsmore, at Mahoning Bank, the sum of one hundred and five dollars and demanded of him a deed for the farm in controversy to Mrs. Kramer.  It was refused by Mr. Dinsmore.  He then made same tender to Lon Pantall, the cashier of the bank, and to Dr. Joseph Shields, both of whom refused the money.  They all alleged that they had nothing to do with the matter.  A like tender and demand of deed was made before the examiner and master by plaintiff to defendant's counsel, plaintiff requesting a deed in pursuance of the terms of the contract; defendant's counsel refused to receive the tender for the reason, as they alleged, that no such contract

was ever made either between the former partnership or the present partnership, known as Mahoning Bank, nor by any person having authority to represent either of them and Mr. George Kramer.

" The testimony in reference to the contract between Hon. Harry White and Geo. Kramer is substantially the same as that taken on the rule to set aside the sheriff's sale. Although there is some conflict in the testimony, the preponderance of the evidence bearing upon this contract indicates that the intention of the parties to it was that the farm in question should be bid up at the sheriff's sale to its full value, which was placed at four to five thousand dollars. It also shows that H. C. Campbell, Esq., Kramer's attorney, who held the custody of said contract, was, within a reasonable time, to send a copy of the same to Judge White, at Indiana, or hand said copy to W. F. Stewart, Esq., the bank's attorney, at Brookville.; at least it is proven and not denied that a copy was to be sent to Judge White, neither is it denied that no such copy was ever furnished to either White or Stewart. It is also quite clearly proven that W. F. Stewart, Esq., had no knowledge whatever of the existence of said contract until some time after the sheriff's sale of the Kramer farm, and the weight of the evidence is that M. J. Dinsmore did not know of its existence until about the same time. He was present during some of the negotiations of the Commercial Hotel on April 21, 1886, but does not seem to have been present when the agreement was consummated, and the papers signed.".

The master, relying on Hart v. Withers, 1 P. & W. 285, held that the partnership was not bound by the agreement executed by Judge White, and recommended that the bill be dismissed.

Exceptions to the master's report were overruled by the court, MAYER, P. J., of the 25th judicial district, specially presiding, and a decree entered dismissing the bill.

*Errors assigned* were, overruling exceptions, quoting them.

*H. Clay Campbell*, for appellant.—Judge White had authority to bind the bank. He was a director and had been its attorney. Dinsmore, the cashier and also a director, was present and assenting to the contract: Fichthorn v. Boyer, 5 Watts, 159;

Bond v. Aitkin, 6 W. & S. 165; Johns v. Battin, 30 Pa. 84 Schmertz v. Shreeve, 62 Pa. 457.

The bank adopted the contract by accepting its benefits. Where one adopts a contract entered into, without authority, he must adopt it altogether, he cannot ratify the beneficial part and reject the remainder: Filby v. Miller, 25 Pa. 264; Mundorff v. Wickersham, 63 Pa. 87. In a compromise of pending litigation, one partner has authority to compromise, release, or even compound a partnership debt: Story on Partnership, 115; Taylor v. Coryell, 12 S. & R. 243; Gay v. Waltman, 89 Pa. 456. The compromise of a suit is a good consideration to support an agreement based thereon : Hagey v. Detweiler, 35 Pa. 409; Fleming v. Ramsey, 46 Pa. 252; 1 Wharton, Cont. § 533, 1 Parsons, Cont. 438.

The master became confused on the question of real estate belonging to partnership, failing to recognize the distinction between real estate held by partners in their individual capacity and that purchased and held with firm assets in the partnership business, and simply treated by the partners as assets of the partnership. When a firm holds lands by deed expressed on its face to be partnership property of the firm, it is stamped, so far as the partners are concerned, with all the attributes of personalty; it continues to be personalty until the partnership is dissolved, the business of the firm settled and the debts paid : Lucas v. Laws, 27 Pa. 211; Erwin's Ap., 39 Pa. 535; West Hickory Mining Co. v. Reed, 80 Pa. 38; Foster v. Barnes, 81 Pa. 377; De Bree v. Albert, 100 Pa. 483; Warrener v. Mitchell, 128 Pa. 153; Collner v. Greig, 137 Pa. 606.

If a purchaser at sheriff's sale agrees with the defendant in the execution that he will convey him the property upon being reimbursed for all the money he has expended, such an agreement is perfectly lawful : Mead v. Conroe, 113 Pa. 220; Pierce v. Schoonover, Appellant, 1 Adv. Rep. 752.

Dinsmore had both knowledge and notice. He was present at the time the contract was made, knew that the case was settled, for he then went home. Besides his personal knowledge, he was bound to inquire. Whatever puts a party on inquiry, amounts to notice, provided it leads to the knowledge of the requisite fact: Jaques v. Weeks, 7 Watts, 267; Hood v. Fahnestock, 1 Pa. 470; Wilson v. McCullough, 23 Pa. 440.

Notice to one partner is notice to all of his copartners : Mc-Clurkin v. Byers, 74 Pa. 405; Stockdale v. Keyes Bros., 79 Pa. 251.

The agreement was clear and parol evidence to explain it is unnecessary : Fisher v. Diebert's Admrs., 54 Pa. 460 ; Cake v. Bank, 116 Pa. 264; Culmans v. Lindsey, 114 Pa. 166.

There are three sources of authority in Judge White to make the contract, either of which would support it : (1) Judge White being a partner and the business being partnership business would be authority enough : Parsons, Part. § 95; Story, Part. §§ 101–2 ; London Savings Fund Soc. v. Hagerstown Sav. Bank, 36 Pa. 498; Edwards v. Tracy, 62 Pa. 374; Reed, Krane & Co. v. Kremer & Co., 111 Pa. 482; Parsons, Part. § 172, and note; Feigley v. Sponeberger, 5 W. & S. 564.   (2) One partner may compromise, release or even compound a partnership debt : Story, Part. § 115; Taylor v. Coryell, 12 S. & R. 243; Gay v. Waltman, 89 Pa. 456.   (3) Defendants received the benefit and advantage of the contract and thereby affirmed it.

*C. Z. Gordon,* with him *Geo. D. Jenks* and *Isaac G. Gordon,* for appellees.—White had no power to bind the partnership by an agreement compelling them to convey land by deed to Mrs. Kramer; the powers of a partner do not go to that length : Hart v. Withers, 1 P. & W. 285; Taylor v. Coryell, 12 S. & R. 243; Hoskinson v. Eliot, 62 Pa. 398; Story, Part. § 119, and note 1; Parsons, Part., 376, ed. 1867.

Wherever there is any sort of suspicion which makes it not fair to call for an execution of an agreement, a court of equity will not give the extraordinary relief of a specific performance but leave the purchaser to his action at the common law : Mortlock v. Buller, 10 Ves. 305; Henderson v. Hays, 2 Watts, 152, 153; Cortelyou's Ap., 102 Pa. 576.

OPINION BY MR. JUSTICE HEYDRICK, January 3, 1893 :

The undisputed facts reported by the master entitle the plaintiff to the relief which she demands.   It is not now a question whether Judge White had authority to make the contract out of which this controversy has grown.   He undertook to make it "for and in behalf of the Mahoning Bank."   It stipulated for certain advantages to the banking association which he as-

sumed, if he was not authorized, to represent.    These advantages, whatever they may have been worth, have all been reaped by the bank.    The rules to show cause why its judgments against George Kramer should not be opened were withdrawn; the pending litigation was terminated; executions, until then stayed by the rules to show cause, were permitted to go out forthwith, and not only was the farm in controversy sold as stipulated, but other real estate of Kramer was seized, sold and purchased by the banking firm as lien creditors entitled to the proceeds of the sale, and it now has, so far as appears, undisputed title thereto if it has not disposed of the same.    By accepting these fruits of the contract the bank affirmed it:  Evans v. Mengel, 6 Watts, 72; Garrett v. Gonter, 42 Pa. 143; and that affirmation related back to its inception and to the authority of the agent to make it.    *Omnis ratihabitio retro trahitur et mandato priori aequiparatur.*    It was not a ratification of so much, only, of the contract as was beneficial, but when the firm accepted the benefits it took them cum onere: Hovil v. Pack, 7 East, 164; and is consequently bound to perform the undertaking in its behalf which was the consideration of the benefits received.

Hart v. Withers, 1 P. & W. 285, relied upon by the master as maintaining a different doctrine, does not sustain his position.    That was an action of covenant against a copartnership upon an instrument sealed by a single member in the firm's name, but in the body purporting to be the deed of him who signed it, and no more seems to have been decided than that under the law merchant one partner has not the power to bind his fellows by deed, for although the question of ratification by subsequent enjoyment of the fruits of the contract was in the cause it was disposed of by the Chief Justice by saying: "Undoubtedly the partnership had the benefit of the plaintiff's wood (the subject in part of the contract), but he thought fit to furnish it on separate account."    But if the immediate context be thought to indicate that the court intended to decide that a deed sealed in the name of a firm by one of its members without precedent special authority could not be adopted by the firm by its subsequent conduct, it must be regarded as having been overruled in this respect by Bond v. Aitkin, 6 W. & S. 165, in which, after referring to the discussion of the subject

in Gram v. Teton, 1 Hall, 262, and Cady v. Shepherd, 11 Pick. 400, it is said: "The principle is settled that a partner may bind his copartner by a contract under seal, in the name and for the use of the firm, in the course of the partnership business, provided the copartner assents to the contract previously to its execution, or afterwards ratifies and adopts it; and this assent or adoption may be by parol. And we are satisfied that the rule is founded upon principles of justice and policy and supported by the general tenor of the adjudged cases in this country and in England."

It is, however, contended that the firm had no knowledge of the existence of the contract until after the sheriff's sale, and that, therefore, their acts in apparent affirmance of it cannot be treated as a ratification or adoption. There is nothing in the articles of association of this firm to take it out of the general law of partnership even as between the members, save only the stipulation "that neither of said parties (the partners) shall during this copartnership . . . . give any note or accept or endorse any bill of exchange in the partnership name for himself or partners . . . . without the express written order or consent of the board of directors first had and obtained." But how this stipulation differentiates this association from an ordinary partnership in respect to the effect of notice to one of its members has not been pointed out. Leaving out of view, however, the fact that Judge White was, as he says, "acting as a director and one of the principal stockholders" in making the settlement with Kramer, and had much to do with the management of the business of the bank, there is abundance else to affect the copartnership with notice of what had been done by him. The firm must be presumed to have had knowledge of its own lawsuit during the pendency of the litigation, and of the proceedings therein, and it would not seem creditable to the members as business men to doubt that they had actual knowledge of the terms of the settlement made, except upon the assumption that they had committed the business to somebody with delegation of plenary powers in the premises, content to abide without question by whatever their agents should do. Mr. Dinsmore, a member of the firm and its cashier and active agent as well as its trustee in respect to the judgments, apparently clothed with ample power to settle the controversy,

was present when Judge White and Mr. Kramer were negotiating the settlement and knew that they had that business in hand, and knew immediately afterwards that a settlement had been accomplished in some way. And when their attorney issued the execution provided in the contract to be issued he learned from the record that a settlement had been made, and his knowledge was the knowledge of his clients. Now if neither Mr. Dinsmore nor the other members of the firm chose to inform themselves of the terms of the settlement which they knew had been made, and upon which they proceeded in issuing the execution, they are in no better position than one who signs a contract without reading or asking to have it read.

The construction put by the master upon the contract, that it is a covenant made by " White for himself and his copartners to convey by deed land belonging to the partnership," is not warranted by the language employed either aided or unaided by the facts found by him. When the contract was made the partnership had no title legal or equitable to the land; it was then Kramer's land; and when the sheriff subsequently conveyed to Dinsmore, ostensibly in trust for the firm, an absolute estate did not pass. The withdrawal of the rule to show cause why the judgment on which the sale was made, the contract and the sheriff's sale and deed were successive steps in the general scheme of settlement. They were in pari materia, and are to be construed together as one transaction: Thompson v. McClenachan, 17 S. & R. 110; Greenfield's Estate, 14 Pa. 501; Cummings v. Antes, 19 Pa. 287. As was said in the latter case: " We cannot separate what the parties have joined and look for their understanding and intentions in one instrument when they have employed three to express them." Not only was the sheriff's sale and deed by which the legal title was vested in Dinsmore provided for in the contract, but, except for the withdrawal of the rule to show cause which must be taken as part of the contract, the sale could not have taken place and the legal title would not have passed. The legal import of the transaction was that, in consideration of the settlement and withdrawal of the rules to show cause, Dinsmore took the title in trust to convey the land to Mrs. Kramer upon payment of the amount of his bid, with interest thereon within two years. While the purpose for which the sheriff's deed was obtained as

well as the manner of obtaining it was perfectly fair, to now use it, or claim it, for another different and unfair purpose would be as much a fraud as to have obtained it by fraudulent means : Parke v. Chadwick, 8 W. & S. 98. No other title than that which was intended did or could pass by the sheriff's sale and deed. It follows that the firm not only had no title to the land at the time of the execution of the contract, but now has no estate in it, legal or equitable. Mr. Dinsmore is the conduit merely through which the title was to be passed from Kramer to his wife, having, however, the right to retain the legal title as security for the money which he or his firm has advanced. A contract to assume the position of such conduit is a very different thing from a contract to sell and convey land.

It is, however, argued, and the master and learned court below held, that it would be inequitable to decree a conveyance under the circumstances of this case. Upon the face of the contract it is fair and conscionable. If the bank's judgments against Kramer had been unassailed and the contract had not stood in its way it would have been perfectly legal for it to have acquired title to the farm for the one hundred dollars which its cashier bid, though it was worth several thousand dollars. The gentlemen who conducted the sale, made the bid, received the deed and now seek to hold the land evidently never thought there was anything unconscionable in acquiring the land at such a price, otherwise they would undoubtedly have bidden more, though there was no competition. And after acknowledgment of the sheriff's deed the sale could not have been avoided for mere inadequacy of price, and because the defendant had been careless of his rights. The purchasers would have been held entitled to stand upon their advantage. Why, then, may not Mrs. Kramer stand upon her advantage if she has gained any? The master replies : " It seems reasonably certain that the understanding between the parties when the contract was made was that said property was to be bid up at the sheriff's sale to about its full value," and that this was prevented by the neglect of Kramer's attorney to furnish Judge White, or the attorney who issued the writ, a copy of the contract. There was no allegation that the understanding referred to was part of the agreement between the parties, and should have been incorporated with the contract,

but had been omitted by fraud, accident or mistake, or that it was a contemporaneous agreement without which the written contract would not have been signed.   It is clear that no such allegation could be successfully made, for the bidding was to be done by the bank or its representative, and the right to bid much or little without accountability to Kramer or his wife for the exercise of judgment or caprice in the matter of bidding was carefully reserved.   Nor was the bank prevented from bidding by the conduct of Kramer or his wife or their attorney.   The master finds that the contract was left in the keeping of Kramer's attorney, and that he agreed to send a copy of it to Judge White and did not do so.   But that was not a concealment of its contents or a misleading by which bidding was or could be prevented.

Nor is it entirely clear that Mrs. Kramer has gained any advantage in consequence of the neglect of the bank to bid the land up to its full value.   It was stipulated as part of the settlement that if the bank should within two years sell certain land in Clearfield county, formerly belonging to Kramer, and purchased by it at a sheriff's sale, for sufficient to cover his indebtedness, Mrs. Kramer should receive a conveyance of the land in controversy without payment of any farther sum.   The only evidence in regard to the Clearfield county land is the contract of sale made by M. J. Dinsmore to the successors of the Mahoning Bank, December 18, 1886, and the schedule thereto annexed, in which a valuation of forty thousand dollars is placed upon it.   Whether that was the price actually paid for it does not clearly appear, but whether this evidence was not sufficient to cast the burden upon the defendants of showing what was actually received by them is a question not entirely free from doubt.   It is not, however, vital; the pinch of the case being in the contract to convey, and Mrs. Kramer's performance of her part.

As to the application to the court to set aside the sheriff's sale, it is enough to say that it is not now the subject of review. It must be presumed that the court refused it for good and sufficient reasons.   The only ground made apparent in this case upon which Mrs. Kramer could have had any standing to resist the application is that she had a vested right under that sale. If that was the ground of the resistance the court's refusal to

set the sale aside was in the nature of an adjudication in her favor upon the question in litigation in this case.

And now, January 2, 1893, it is ordered, adjudged and decreed that the decree of the court below be reversed and the plaintiff's bill reinstated.

And it is further ordered, adjudged and decreed that the defendant, M. J. Dinsmore, upon the payment or tender to him of the sum of one hundred dollars with interest thereon, from the 14th day of September, 1886, convey by good and sufficient deed to Sarah Kramer, the plaintiff, the land and premises described in the deed of Henry Chamberlain, sheriff of Jefferson county, to him, the said M. J. Dinsmore, dated 14th of September, 1886, and recorded in sheriff's deed book No. 1, of said county, at page 439, and pay the costs of this suit; and the record is remitted for enforcement of this decree by the court below.