424 A.2d 1375

**Lepha I. STEUART**

v.

**William McCHESNEY & Joyce McChesney, Appellants.**

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed Jan. 30, 1981.

Petition for Allowance of Appeal Granted June 1, 1981.

James C. Blackman, Warren, for appellants.

M. Richard Mellon, Erie, for appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

CAVANAUGH, Judge:

The dispute in this case involves the interpretation to be given a right of first refusal contained in an agreement entered into by the parties. William C. McChesney and Joyce C. McChesney, husband and wife, and James A. Steuart (now deceased) and Lepha I. Steuart, husband and wife, exchanged parcels of property. By an Agreement entered into on June 8, 1968 the Steuarts granted the McChesneys a right of first refusal for the purchase of certain other property. The Agreement provided:

"(a) During the lifetime of said Steuarts, should said Steuarts obtain a Bona Fide Purchaser for Value, the said McChesneys may exercise their right to purchase said premises at a value equivalent to the market value of the premises according to the assessment rolls as maintained by the County of Warren and Commonwealth of Pennsylvania for the levying and assessing of real estate taxes; provided, however, that the date of valuation shall be that upon which the said Steuarts notify said McChesneys, in writing, of the existence of a Bona Fide Purchaser."

Mrs. Steuart received offers from bona fide purchasers ranging from $30,000 to $35,000. The property was appraised by two appraisers at approximately $40,000 and $50,000. The McChesneys chose to exercise their right to purchase the property and tendered Mrs. Steuart $7,820.00, which was an amount twice that indicated on the assessment rolls of Warren County.[1] The tender was refused. Mrs. Steuart brought an action to quiet title seeking that the agreement be set aside due to its ambiguous nature or that the McChesneys be compelled to specifically perform the contract by purchasing the property at a price equal to a bona-fide offer or the appraised value. The appellants sought specific performance of the conveyance at the $7,820.00 purchase price.

The lower court held that the mutual intent of the parties was that the formula of twice the assessed values serve as "a mutual protective minimum price for the premises rather than to be the controlling price without regard to a market third party offer." A decree nisi was entered granting specific performance of the preemptive right at a purchase price of $35,000. Exceptions were taken and denied. A final adjudication was entered on May 16, 1979, from which the McChesneys have taken this appeal. We reverse.

■ The question before us is whether the clause containing the right of first refusal is ambiguous so as to require

1. At all times pertinent to this dispute Warren County valuated its realty for tax assessment purposes at a ratio of 50% of assessed value to market value.

interpretation. It is established that the intent of the parties to a written contract is the writing itself and when the words are clear and unambiguous the intent is to be found only in the express language of the agreement. *Felte v. White*, 451 Pa. 137, 302 A.2d 347 (1973); *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965); *Siciliano v. Misler*, 399 Pa. 406, 160 A.2d 422 (1960). Thus it is said that the agreement that is clear and unambiguous speaks for itself and is not subject to interpretation by reference to any circumstances other than those recited in the written agreement. *See Felte v. White, supra; East Crossroads Center, Inc. v. Mellon-Stuart Co., supra.*

■ In view of these principles we find that the language of the agreement is clear and unambiguous. The plain meaning of the clause in question is that if, during the lifetime of the Steuarts, they should obtain a bona fide purchaser for value, the McChesneys could purchase the property "at a value equivalent to the market value of the premises according to the assessment rolls as maintained by the County of Warren".

The appellee, Mrs. Steuart, contends that under the contract the McChesneys' right to purchase is a right of pre-emption at a value equal to the bona fide offer. For this proposition appellee relies on *Bobali Corp. v. Tamapa Co.*, 235 Pa.Super. 1, 340 A.2d 485 (1975). However, this case can be distinguished from the instant case.

The issue in *Bobali* was the construction to be given a real estate instrument containing both an option to purchase at a fixed price, and a first refusal option to purchase at an unspecified price if, at some future time, it was offered by a third party. As part of the consideration for entering into a land sale agreement, Bobali granted Tamapa an option to purchase a contiguous tract at a fixed price upon compliance with certain terms. According to the option Tamapa had two and one-half years to exercise the option. However, the clause granting the option contained the modifying phrase "unless earlier terminated as hereinafter provided." The only reference in the contract to this phrase is found in the

paragraph containing the right of first refusal. The right of first refusal provided that Bobali could not sell or dispose of the contiguous tract without giving Tamapa thirty days notice. Tamapa would then have thirty days to decide if it would purchase the property "at the same price and on the same terms and conditions" as the bona fide third party purchaser had agreed to. If Tamapa refused and the sale was made to the third party, the contract provided that the right of preemption shall lapse *and the option agreement shall terminate.*

Tamapa argued that the option agreement terminated only upon the sale of the tract to a third party and that, therefore, the mere offer by a third party did not preclude Tamapa from purchasing at the option price. We found this argument untenable, however, as it unduly strained the construction of the paragraph containing the right of first refusal. Thus we held that, although the option agreement was not skillfully drafted, and appellant's interpretation of it seemed remotely plausible, the construction that the option terminated with a bona fide offer was more in keeping with the plain meaning of the language used.

The analogy appellee and the lower court attempt to draw between the instant case and *Bobali* is strained. The agreement in *Bobali* contained both a fixed price option and a right of first refusal. Thus the question arose as to what effect a bona fide offer had on the party's rights under the option agreement. The court held that the fixed price option was modified by the right of first refusal. Here, however, we are not asked to construe a dual option agreement (i. e., an agreement containing both a fixed price option and a right of first refusal). Unlike *Bobali* the right to purchase granted by the clause in question is not contingent upon any other provision of the contract. The mere insertion of the phrase "bona fide purchaser" in the disputed clause cannot be said to modify or limit the McChesneys' right to purchase the property at the stated price. The McChesneys' attorney who drafted the agreement testified below that the exercise of the right to purchase was made contingent on the receipt of a bona fide offer so that the

McChesneys would not be induced to buy when a less than serious or sham offer had been made.

There is no language in the agreement to support the lower court's holding that the formula of two times the assessed value "set a mutual protective minimum price for the premises." Further, if the appellees had intended that the McChesneys purchase at an amount equal to a bona fide offer, the contract should have so stated. The discrepancy between the option price and the bona fide offer cannot be cured by construction where no ambiguity exists. We are not free to redraft an agreement simply because the parties realize at the time the rights under the agreement are to be exercised that there is substantial divergence between the market price and the market price according to the assessment rolls. "The premise that a particular contract works a hardship cannot be used to arrive at what would be 'a better bargain' for one or the other of the parties, or a more desirable interpretation. Only where the terms of the contract are ambiguous are we permitted, by construction, to avoid an unconscionable result." *Sanford-Day Iron Works v. Fancy Hill Coal Co.*, 321 Pa. 204, 206, 183 A. 770 (1936).

 Appellee asserts that specific performance should not be granted at the stated price due to equitable considerations. The only argument appellee raises is the discrepancy between the market value according to the assessment rolls and the amount of the bona fide offers. However, more must be shown in order to find that the agreement is inequitable or unconscionable so as to make it not a proper subject of an action for specific performance:

"Inadequacy of consideration is not ground for refusing to decree specific performance of a contract to convey real estate, unless there is evidence of fraud or unfairness in the transaction sufficient to make it inequitable to compel performance: *Harris v. Tyson*, 24 Pa. 347, 360; *Graham v. Pancoast*, 30 Pa. 89, 97; *Cummings' App.*, 67 Pa. 404; *Bowers v. Bennethum*, 133 Pa. 306, 19 A. 624; *Jackson's Est.*, 203 Pa. 33, 52 A. 125. 'Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescis-

sion of a contract. For such action something more is demanded,—such as fraud, mistake or illegality.' *Frey's Est.*, 223 Pa. 61, 65, 72 A. 317, 318."

*Snow v. Corsica Construction Co., Inc.*, 459 Pa. 528, 531–32, 329 A.2d 887, 888–89 (1974). Further, inequity or hardship is not a valid defense if the hardship is due to the defendant's own acts or to events clearly foreseeable. *Payne v. Clark*, 409 Pa. 557, 187 A.2d 769 (1963); *Kramer v. Dinsmore*, 152 Pa. 264, 25 A. 789 (1893).

Because appellee alleges no facts which would show that the transaction was inequitable, we cannot deny specific performance.

Reversed.

VAN der VOORT, J., filed a dissenting opinion.

VAN der VOORT, Judge, dissenting:

This litigation originated in a Complaint in Equity by plaintiff-appellee to quiet title to a parcel of real estate. The Amended Complaint recited that appellee and her husband now deceased, executed a written agreement with appellants on June 8, 1968, referred to in the Complaint as a "Right of Preemption", also styled a "Right of First Refusal," to purchase a piece of real estate owned by appellee and her husband. The written agreement recited that the parties had exchanged certain other real property and that the Steuarts were granting to the McChesneys a right of first refusal to purchase a remaining parcel of land upon the following terms and conditions:

"(a) During the lifetime of said Steuarts should said Steuarts obtain a Bona Fide Purchaser for Value, the said McChesneys may exercise their right to purchase said premises at a value equivalent to the market value of the premises according to the assessment rolls as maintained by the County of Warren and Commonwealth of Pennsylvania for the levying and assessing of real estate taxes; provided, however, that the date of valuation shall be that upon which the said Steuarts notify said McChesneys, in writing, of the existence of a Bona Fide Purchaser."

*The agreement was prepared by an attorney employed by the McChesneys.*

On October 10, 1977, Lepha Steuart received an offer of $32,000 for the property from one Hajec; on October 13, 1977, an offer of $30,000 from Bauer; and on October 28, 1977, an offer of $39,500 from an investment group in the City of Pittsburgh. Appellee also procured an appraisal from a real estate expert of $50,000.

The complaint avers that appellants on November 11, 1977, offered to purchase the property for $7,820, which figure is precisely two times the assessed value of the property on the rolls maintained in Warren County (established in 1959 whereby the assessed value is 50% of the actual market value).

Appellee's Amended Complaint asked the Court to make a determination of the validity and effect of the Right of First Refusal, and to compel appellants to cancel the agreement or, in the alternative, to exercise the Right of First Refusal for the fair market value of the property as determined by the appraisal or other offers on the property.

Appellants filed an answer and by way of New Matter, asked that appellee be commanded to execute a deed to appellants for $7,820.

The lower court concluded that the mutual intent of the parties to the agreement was that the formula of two times the assessed value "set a mutual protective minimum price for the premises rather than to be the controlling price without regard to a market third party offer."

The trial judge therefore entered a decree nisi giving appellants a preemptive right to purchase the land for $35,000, exercisable within thirty days. Appellants filed exceptions which were dismissed and a final adjudication was entered on May 16, 1979, from which appellants have taken the present appeal.

I would affirm the decision of the court below. I think there is an inherent ambiguity between the grant of "a Right of First Refusal", as recited in the Agreement between the parties and the language of the Agreement as

quoted above. If the Steuarts had so elected they could have agreed to sell the property to the McChesneys with or without the existence of a "Bona Fide Purchaser for Value" at two times the assessed value, but the Agreement does not so provide. It says that "the said McChesneys may exercise their right to purchase . . ." "(at the formulated price)," if "said Steuarts obtain a Bona Fide Purchaser for Value."

The reference in the quoted language to a "Bona Fide Purchaser for Value" seems to me to imply that the selling price offered by the Bona Fide Purchaser is the price at which the optionees may exercise their preemptive right. Otherwise, there seems to be no point to the several references to a Bona Fide Purchaser. If the parties had simply intended that the McChesneys were to have the option to buy the land at their pleasure within the remaining lives of the Steuarts they could have set the price at two times the assessed value without reference to Bona Fide Purchasers.

The scrivener was the attorney for the McChesneys. This ambiguity should not be resolved in the McChesneys' favor. See *Elfant v. Clauss*, 197 Pa.Super. 201, 177 A.2d 153 (1962); *Bobali Corp. v. Tamapa Co.*, 235 Pa.Super. 1, 340 A.2d 485 (1975), cited by the lower court and by the parties supports the conclusion of the lower court.

I respectfully dissent and would affirm the order of the court below.