## Hewes *versus* Taylor.

1. Hewes, by letter of 10th, proposed to Taylor to give him goods if he would guaranty payment for goods to be sold to another, and asked where the goods to Taylor should be shipped. Taylor, by letter *dated* 9th, wrote: "I received yours yesterday," and told him where to ship the goods. *Held*, in a suit against Taylor on a guaranty, that Hewes might prove that the letter *dated* 9th was in answer to his of 10th.

2. Under the Act of 26th April 1855 (Frauds), the date of a writing, whether omitted or inaccurately inserted, may be proved by parol.

January 19th 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county*: No. 249, to January Term 1872.

This was an action of assumpsit by Charles P. Hewes against Elisha B. Taylor.

The plaintiff, residing in Chester county, Penna., had been selling phosphate of lime to the firm of Ridgway & Miers residing at Crosswicks, N. J. They were in his debt and desired more phosphate; being unwilling to give them further credit, the defendant as the plaintiff alleged, in consideration of a ton of phosphate delivered to him by the plaintiff, agreed to become responsible for the payment of phosphate sent to Ridgway & Miers. The plaintiff accordingly sent them more phosphate, the amount due by them and unpaid being $622.78.

The plaintiff gave in evidence the following letters:—

West Chester, September 9th 1871.

Elisha B. Taylor:

Respected Friend:—I have an order from Ridgway & Miers

[Hewes *v.* Taylor.]

for thirty tons of phosphate.   They have already about six hundred dollars ($600) worth,—most of it sold I suppose.   The agreement between Ridgway & Miers and myself is that they are to sell my phosphate on commission, and after all or any part of what I send them is sold, they are to give me their note for the amount sold payable in sixty days with your endorsement.

Now, as this will be a larger amount than they have previously had, I don't feel willing to ship it without first consulting you and knowing whether you will hold yourself responsible to me for the amount of, say two thousand dollars, if I send them that amount of phosphate, as I know nothing about Mr. Ridgway or his partner, or at least very little.   Please write an answer by bearer.

Yours truly,        C. P. HEWES.

West Chester, September 10th 1869.

Elisha B. Taylor :

Respected friend :—I wrote to you yesterday by N. T. Hayes in regard to sending Ridgway & Miers phosphate and you going their security.   N. T. Hayes tells me you will go their security to me for the amount of two thousand dollars for the compensation of one ton of phosphate.   This is a pretty heavy shave, but as it may turn out to Ridgway & Miers's benefit as well as my own, I will agree to send you the one ton of phosphate as you propose. Please send me word when and where you want it shipped, you to pay freight.

Please answer by return of mail.

Yours, &c.,        C. P. HEWES.

Doe Run, September 9th 1869.

C. P. Hewes :

Sir : I received yours yesterday.   Please send one-half ton of phosphate to Samuel Evans, Westdale Station, Delaware county. The other half-ton I will send for or order when I want it.

Yours respectfully,        E. B. TAYLOR.

The plaintiff testified : * * *

" I wrote to Mr. Taylor September 9th 1869, and received a verbal message in reply.   In consequence of that message I wrote next day, dated September 10th 1869.   To that letter I received his reply, dated September 9th 1869.   September 15th 1869, I shipped the 30 tons to Ridgway & Meirs.   I wrote the letter dated September 9th on the day of its date.   I sent it by private messenger.   He brought it back with a message from Taylor.   I sent the letter of September 9th, by Nathan T. Hayes. Mr. Taylor's letter of September 9th came subsequently to mine of September 10th and in answer to it.   There was an envelope on it at that time.   I believe the envelope was post-marked Doe Run, September 9th.   My letter dated September 10th was sent

[Hewes *v.* Taylor.]

to Mr. Taylor that day. I wrote no other letters to him about that time. I don't remember sending to him more than once."

The defendant's point was:—

There is no evidence of a guaranty or promise on the part of defendant to pay the debt of Ridgway & Miers, and under the Statute of Frauds of 1855, the plaintiff cannot recover.

The court (Butler, P. J.) charged the jury that if they found that Mr. Taylor's letter of September 9th was written in answer to Mr. Hewes's letter of September 10th, they should find a verdict for the plaintiff, and reserved the point submitted by the defendant.

The jury found for the plaintiff for $723.63.

The court subsequently entered judgment for the defendant, notwithstanding the verdict, and delivered the following opinion:—

"This is an action to charge the defendant upon a special promise to answer the debt or default of another. On the trial the defendant made the point that no agreement in writing was shown signed by him, as required by the Act of April 26th 1855. This point was reserved—the jury being instructed by consent of the parties to find a verdict for the plaintiff for $723.63, if they should first find that the defendant's letter of September 9th was written in answer to the plaintiff's of September 10th. And coming now to consider the point, we are clearly of opinion that judgment must be entered for the defendant. What will constitute such writing as is required by the statute, has been much discussed in the English cases, and a good deal in those of our own country; but the time afforded us at present will not admit of a reference to them. That it may be found in a connected correspondence there is no room for doubt. As is said by Mr. Parsons (Parsons on Contracts, p. 298), it may be contained in one or in many papers, provided where there are several the pieces be so connected by mutual reference or otherwise, that there can be no uncertainty when taken together and viewed as a whole. But this connection of the several parts cannot be made out by extrinsic evidence. If they may be read ·apart, or in other connections, evidence is not admissible to prove that they were intended to be read together.

"In the case before us the only writing is what is contained in the correspondence. And the plaintiff must rely entirely upon his letter of September 10th and the defendant's of September 9th. If the dates agreed, these letters would still not support the action. The plaintiff infers assent to his written statement from the defendant's order for phosphate. And if the dates corresponded, this inference would have the support of probability. But it is by no means *certain*, and the lack of certainty would be fatal. But the dates do *not* correspond. The defendant's letter appears to have been written and mailed on the 9th, one day

*earlier* than the plaintiff's; and purports to be an answer to one received on the 8th. It is impossible, therefore, to read it as an answer to the plaintiff's of the 10th, and we cannot, as we have seen, resort to extrinsic evidence to explain this away and make the letters fit. Upon their face they show no agreement, and it would be as dangerous to resort to parol evidence to make an agreement out of them, as to prove an agreement by such evidence without them. Indeed, unless we change the dates and make the letters speak as of a different time, and then conclude that the defendant's of the 9th was an answer to the plaintiff's of the 10th, it does not appear even that the plaintiff's was ever brought to the defendant's knowledge. I believe the plaintiff says he forwarded it by mail. But while this affords evidence from which a jury might, probably, find that it was received, the law draws no such conclusion from it in this state, however the rule may be elsewhere: Tanner *v.* Hughes, 3 P. F. Smith 289; Bank *v.* Brown, 19 Id. 156.''

The plaintiff took a writ of error, and assigned for error, entering judgment for the defendant on the reserved part.

*W. B. Waddell* and *W. Darlington* (with whom was *R. T. Cornwell*), for plaintiff in error.—Writings may be read in the light of surrounding circumstances : Greenl. Ev. sect. 277. The exclusion of parol evidence is to the *terms* in which the writing is couched: Barnhart *v.* Riddle, 5 Casey 92; Aldridge *v.* Eshleman, 10 Wright 421.

*P. F. Smith* (with whom were *G. F. Smith* and *R. Davis*), for defendant in error, cited Malone *v.* Keener, 8 Wright 109; Shively *v.* Black, 9 Id. 345; Boydell *v.* Drummond, 11 East 142; Smith on Contracts (by Rawle) 103.

The opinion of the court was delivered, February 19th 1872, by

THOMPSON, C. J.—It seems to us very clear that the letters of the plaintiff of the 9th and 10th of September 1869, to the defendant, actually preceded his of the 9th, especially when taken in connection with the testimony of the plaintiff himself. He testified that his letter of the 9th of September he sent by Nathan T. Hayes, and that in consequence of the message returned, he wrote the letter of the 10th to the defendant, and that the letter of the latter, dated the 9th, was an answer to his of the 10th. It seems obvious that the plaintiff's letter of the 10th was in consequence of a communication received from the defendant, for it refers to a proposition he had received from him about guaranteeing Ridgway and Miers's undertaking, and about which he says he thinks it is "a pretty heavy shave." It seems equally apparent that the "shave" had reference to his inquiry in a

[Hewes v. Taylor.]

former letter, whether he, the defendant, would guarantee the payment by Ridgway & Miers, and the answer, through Hayes, if he should fill their order for phosphate. No ingenuity conceivable would be equal to the fabrication of such circumstantial details in the absence of all truth. They certainly, together with the parol testimony, prove a mistake in the date of either the plaintiff's or defendant's letters, and in this case it is immaterial which.

But the mistake is what the learned judge below thought could not be proved without contravening the Statute of Frauds of 1855. We think this was error. It is the agreement to guarantee the debt or default of another, which the act requires to be in writing. The agreement would be good without a date, or even if it had an impossible date. The date is a circumstance of identification as to time only; proof of it does not add to, alter or change the terms of the agreement, although it might be forgery if inserted without consent or authority. I know of no case, however, in which it may not be established by parol proof if omitted in the writing by mistake, in the first place.

The letters here connect themselves so completely and perfectly, in sense and in the development of a united design, and both parties so fully acted up to the very details of the proposed contract without objection, the jury could hardly have hesitated in finding that the defendant's letter of the date of 9th of September was in answer to plaintiff's of the date of the 10th. This they did, and thus a contract resulted. In Shively v. Black, 9 Wright 345, we held that the consideration of the guaranty to answer for the debt or default of another, although omitted in the writing, could be shown by parol. This was a liberality of construction of the act, equal, if not superior, to that desired in this case. It was shown by my brother Read, in the opinion in that case, that this is the present English rule, although long resisted in their courts. We think the contract found by the jury was legitimately deduced from the letters and testimony, and that the learned court erred in not entering judgment on the verdict. It will be done now here.

And now, February 19th 1872, judgment on the reserved question entered *non obstante veredicto* is reversed, and judgment is entered on the verdict for $723.63, with interest from its date, and costs of suit.