329 A.2d 887

Alfred L. SNOW and Sally C. Snow, his wife, Appellees,

v.

CORSICA CONSTRUCTION COMPANY, INC.,
a corporation, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 26, 1973.

Decided Oct. 16, 1974.

Rehearing Denied Jan. 10, 1975.

530

George A. Conti, Jr., Jeannette, for appellant.

Robert E. Tucker, Feldstein, Bloom & Grinberg, Pittsburgh, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal from a final decree in equity by the court *en banc* dismissing exceptions to a decree nisi wherein the chancellor granted specific performance of an agreement for the sale of land.

The court *en banc* affirmed the chancellor's findings of fact including the following. Appellant Corsica Construction Company, Inc. [hereinafter Corsica] owned a plan of lots of Hempfield Township, Pennsylvania. On May 25, 1970, appellees, Alfred and Sally Snow, as buyers, and Ronald J. Miller as President of Corsica and Margaret E. Miller, his wife, as sellers, entered into an

agreement for the sale of a parcel of land designated "Lot No. 9" in the aforementioned plan of lots. At the real estate closing Ronald Miller informed appellees that Corsica also owned the parcel of land lying behind Lot No. 9. On July 27, 1970, an agreement for the sale of this parcel was signed by appellees and by Mr. Miller, again as President of Corsica.

Upon Corsica's refusal to convey the land which was the subject of the July 27th agreement, appellees instituted this suit in equity. Specific performance was decreed as requested. Thereupon Corsica appealed to this Court.

The first assignment of error is that the chancellor should have found the agreement to be unconscionable and inequitable and thus not the proper subject of an action for specific performance.

In a thorough discussion of the area of the law to which this objection is addressed this Court stated:

"Inadequacy of consideration is not ground for refusing to decree specific performance of a contract to convey real estate, unless there is evidence of fraud or unfairness in the transaction sufficient to make it inequitable to compel performance: *Harris v. Tyson*, 24 Pa. 347, 360; *Graham v. Pancoast*, 30 Pa. 89, 97; *Cummings's App.*, 67 Pa. 404; *Bowers v. Bennethum*, 133 Pa. 306, 19 A. 624; *Jackson's Est.*, 203 Pa. 33, 52 A. 125. 'Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract. For such action something more is demanded,— such as fraud, mistake or illegality.' *Frey's Est.*, 223 Pa. 61, 65, 72 A. 317, 318. Although relief in equity is a matter of grace only and not of right, and rests in the discretion of the court, to be exercised upon a consideration of all the circumstances of the case, it does not follow that a decree for specific performance must be entered in all cases where the agreement is legally

sound and the price adequate, but if the transaction be inequitable or unjust in itself or rendered so by matters subsequently occurring, specific performance may be denied and the parties turned over to their remedy in damages (*Rennyson v. Rozell*, 106 Pa. 407, 412), and, while no rule applicable to all cases can be announced, it may be said that specific relief will be granted if apparent that, in view of all the circumstances, it will subserve the ends of justice, and will be withheld where, on a like view, it appears hardship or injustice will result to either of the parties. *Rennyson v. Rozell*, supra; *Spotts v. Eisenhauer*, 31 Pa.Super. 89, 93."

*Welsh v. Ford*, 282 Pa. 96, 99, 127 A. 431, 432 (1925). See also *Payne v. Clark*, 409 Pa. 557, 560, 187 A.2d 769, 771 (1963); *Oreovecy v. Mexico*, 382 Pa. 56, 59, 114 A. 2d 126, 128 (1955); *Rupniewski v. Miazga*, 299 Pa. 190, 192, 149 A. 193, 194–195 (1930).

■ The chancellor's findings 6 and 11 affirmed by the court *en banc* provided:

"6. On July 27th, 1970, Ronald J. Miller signed an agreement as President of Corsica Construction Company, Inc., agreeing to convey the parcel of land lying behind Lot No. 9 to the Plaintiffs."

"11. Ronald J. Miller, President of the Defendant, has participated in and has extensive knowledge concerning real estate transactions and agreements."

It is fundamental law that the chancellor's findings of fact, based upon adequate evidence, which are approved by the court *en banc*, have the force and effect of a jury's verdict and will not be disturbed on appeal.

■ Here the record reflects that although appellant now contends that the parcel is worth $6,000 [1] at the time of the signing of this agreement, the property was

1. The stated consideration in the agreement was one dollar plus the assumption of settlement cost and transfer stamps by buyer.

viewed by the appellant as an unprofitable tax burden. Mr. Snow testified that during his discussions, Mr. Miller stated:

". . . Mr. Miller indicated it was about a hundred and eighty feet deep but that we could have the land behind that lot because he couldn't get to it. It was of no use and it would just cost him taxes. However he didn't want to be put into any expenses in transferring the land so we would also have to pay the surveyor's fee and taxes and whatever other expenses were involved."

Further, Mr. Miller's own testimony established that his business was buying, developing and selling land and building and selling homes. The record is barren of any suggestion of fraud or imposition and provides absolutely no basis for a finding that it would be unjust or inequitable to enforce this agreement. That appellant has subsequent to the signing of this agreement found a more profitable way of disposing of the property in question does not supply the equitable considerations that would cause a court to deny specific performance.

The appellant next argues that specific performance should not be permitted because the agreement is not sufficiently specific and definite in its terms. It is the appellant's contention that the indefinite and/or conflicting terms in the agreement establish that there was never a meeting of the minds but merely an agreement to make an agreement for the sale of an undetermined parcel of land for an undetermined price in the future. The specific complaints are that the northern boundary of the property was insufficiently defined; that the plan attached to the agreement neither shows the subject land completely nor is it in accord with the agreement; that the agreement states the subject land lies "in a general easterly direction from . . . Lot No. 9" whereas the parcel lies to the west of Lot No. 9; and that the agreement was not dated. The thrust of this argu-

ment is that these alleged discrepancies and/or omissions suggest that this was not an agreement susceptible to specific performance but at best an agreement to make an agreement.

■  Meeting first the contention that this was in fact not a final agreement we recognize that this is a question of fact for the trier of fact to determine whether a contract exists.

"Initially, we note that when the evidence is conflicting as to whether the parties intended that a particular writing would constitute a complete expression of their agreement it has been held that it is a question of fact for the trier of fact to determine whether a contract exists. See *Associated Hardware Supply Co. v. Big Wheel Distributing Co.*, 355 F.2d 114 (3d Cir. 1966); *Melo-Sonics Corporation v. Cropp*, 342 F.2d 856 (3d Cir. 1965); *Goldman v. McShain*, 432 Pa. 61, 247 A.2d 455 (1968); see also *Building Mart, Inc. v. Allison Steel Manufacturing*, 380 F.2d 196 (10th Cir. 1967); 3 Corbin, Contracts §§ 554, 595 (1960). Since the chancellor found that the letter agreement of August 14, 1968 was intended by the parties to be a valid, binding contract, we will not reverse his finding: 'unless it appears that he has clearly abused his discretion or committed an error of law [citing cases] and . . . the findings have the full force of a jury verdict and, if supported by sufficient evidence and if affirmed by the court en banc, will not be disturbed on appeal (*Girard Trust Bank v. Sweeney*, 426 Pa. 324, 231 A.2d 407 (1967). As we stated in *Masciantonio Will*, 392 Pa. 362, 367, 141 A.2d 362 (1958), "The test is not whether we, the appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witness, 'but rather whether a judicial mind, on due consideration of the evidence, as a whole, could reasonably have reached the conclusion of the chancellor.' " ' *Yuhas v.*

*Schmidt*, 434 Pa. 447, 453–454, 258 A.2d 616, 619–620 (1969). *See Baldassarre v. Rare Metals Derivatives, Inc.*, 444 Pa. 100, 282 A.2d 262 (1971)." *Field v. Golden Triangle Broadcasting, Inc.*, 451 Pa. 410, 414–415, 305 A.2d 689, 691–692 (1973).

■ An examination of the record before us discloses more than sufficient evidence from which the chancellor could support his finding that the parties did in fact enter into an agreement of sale. We cannot accept appellant's premise of an indefinite or conflicting agreement but rather, as will be discussed infra, we are satisfied that the terms of the agreement are clear, precise, complete and free from ambiguity which is not only indicative of an intent to enter a final agreement and not just an agreement to make a future contract but further an appropriate agreement to warrant specific performance.

■ The agreement sets forth the following description of the parcel to be conveyed:

"All that certain lot or tract of ground situate in Hempfield Township, which lies in a general easterly direction from and is bordered by Lot No. 9 in that certain plan of lots known as the Mt. Vernon Plan and recorded in the Recorder of Deeds Office in Westmoreland County, Pennsylvania, in Deed Book Volume 49 page 102.

The subject land is bordered on the North by a line which is the westerly extension of the northern boundary of the above-mentioned Lot No. 9. On the South, the subject land is bordered by the southwesterly extension of the southeast border of the above-mentioned Lot No. 9. To the west, the subject land extends to the limit of the property presently owned by the above-mentioned parties of the first part.

Said subject land is outlined in red on the attached plot plan and shall be better described at the time of closing, after it has been surveyed.

*The subject land shall be bounded on the North by a line to be decided upon by the party of the first part within the limits of a westerly extension of the northerly boundary of lot number 9 and a line beginning at the most northwesterly point of lot number 9 and extended southwesterly exactly parallel to the southerly boundary above mentioned.* (Parenthesis indicated deletion and italics indicate interlineation)."

This description was supplemented by a survey map which was referred to in the agreement and therefore may be incorporated by reference. *Merwarth v. Townsend,* 455 Pa. 475, 478, 317 A.2d 275 (1974).

In our view this evidence, which describes with specificity all the boundaries and exact size and location of the parcel, is sufficiently definite to identify the parcel and to warrant specific performance. See *Merwarth v. Townsend, supra* and *Yinger v. Springer,* 452 Pa. 66, 305 A.2d 19 (1973). There is nothing in the record to support appellant's claims that the northern boundary is insufficiently defined or that the accompanying plan is incomplete and not in accord with the agreement. Indeed the only support for these statements are appellant's assertions that the sketch attached to the agreement was not acceptable to Mr. Miller, that the land was not defined until after the agreement was signed, that appellee did not know the extent of the land, and that Mr. Miller never knew of the parcel to be conveyed. However, the chancellor found, based upon sufficient competent evidence including the signed agreement, the survey map, and the testimony, that the boundaries were sufficiently defined to identify with certainty the parcel to be conveyed and that all the parties agreed to the sale of the described parcel.

■ Appellant also attempts to undercut the agreement's enforceability in equity by stating that the agreement defines a parcel lying in an "easterly direction from . . . Lot No. 9" whereas the parcel in issue is

generally west of Lot No. 9. This was merely a typographical error and the specificity with which the remaining language describes the parcel is sufficient to obviate any ambiguity.

■ Finally, appellant attempts to support his claim that the agreement is so unspecific as to be incapable of specific performance by the fact that it was not dated. However, this allegation is also without merit since that information was properly supplied by parol evidence. *Title Guaranty & Surety Company v. Lippincott*, 252 Pa. 112, 120, 97 A. 201, 206 (1916); *Hewes v. Taylor*, 70 Pa. 387 (1872).

Decree affirmed. Each party to pay own costs.

ROBERTS, J., did not participate in the consideration or decision of this case.