In re Lance Roger **MIRKIN**, Debtor.

Mark **MENDELSON**, Plaintiff,

v.

Russell J. **HARGROVE** & Diane Grace Hargrove, h/w and Lance Mirkin, Defendants.

Bankruptcy No. 88–13419S.
Adv. No. 89–0023S.

United States Bankruptcy Court, E.D. Pennsylvania.

May 25, 1989.

Jill E. Jackera, Philadelphia, Pa., for plaintiff.

Michael P. O'Connor, Lorraine J. Zwolak, Philadelphia, Pa., Leonard Davis, III, Doylestown, Pa., for Hargroves.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

Alan D. Budman, Philadelphia, Pa., for debtor.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION AND PROCEDURAL HISTORY

At issue in this proceeding is the relative priority of two mortgages against a property purchased by the Chapter 13 Debtor-mortgagor, LANCE ROGER MIRKIN (hereinafter "the Debtor"), located at 743 Maple Lane, Philadelphia, Pennsylvania

19124 (hereinafter "the Premises"). The Plaintiff, MARK MENDELSON (hereinafter "the Plaintiff"), a cousin of the Debtor, is the assignee of a bank mortgage and bases his claim almost exclusively upon the express agreement of the mortgagee-defendants, RUSSELL J. HARGROVE and DIANE GRACE HARGROVE (referred to hereinafter as "the Defendants"),[1] in the Agreement of Sale to take back a *second* purchase-money mortgage. The Defendants, meanwhile, clearly recorded their "second mortgage" before the mortgage now held by the Plaintiff. We find that the statutory law clearly supports the Defendants' position. In addition, the cumulative effect of (1) defects in the Plaintiff's mortgage; (2) our question as to whether the Plaintiff's assignor is a third-party beneficiary entitled to enforce any provisions in the Agreement of Sale; and (3) the Plaintiff's lack of qualification as a bona fide purchaser in the assignment, cause us to conclude that both the law and the equities are decidedly in favor of the Defendants. We therefore hold that the Defendants' mortgage has priority over that of the Plaintiff.

The Debtor filed the underlying individual Chapter 13 bankruptcy case on September 30, 1988. On December 19, 1988, the Plaintiff filed a motion for relief from the automatic stay in order to foreclose on his mortgage upon the Premises in the face amount of $90,000 and certain mortgages against the Debtor's residence at 8522 Benton Avenue, Philadelphia, Pennsylvania 19152 (hereinafter "Benton Avenue"), in the face amount of $25,000. This motion was settled by a Stipulation of January 12, 1989, pursuant to which the Plaintiff agreed to forebear from foreclosing for a 60-day period in which the Debtor would attempt to sell the Premises. On April 3, 1989, the Plaintiff filed a Certification alleging that the Premises had not been sold and that he was therefore entitled to relief.

On January 9, 1989, the Defendants also filed a motion for relief in order that they could foreclose upon their mortgage against the Premises in the face amount of $20,000. After a contested hearing on April 6, 1989, we granted relief to the Defendants. That same day, we entered an Order granting the Plaintiff relief pursuant to the Certification of Default of the Stipulation of January 12, 1989.

The only other notable development in the Debtor's main bankruptcy case was his failure to appear at the meeting of creditors scheduled pursuant to 11 U.S.C. § 341 on April 19, 1989. In light of this development, which has prevented the scheduling of a Confirmation hearing and hence stalled any progress in the case, we are listing the case for dismissal in our accompanying order.

The Plaintiff commenced this proceeding on January 13, 1989, while both of the ultimately-successful above-mentioned motions for relief from the automatic stay were pending. The Defendants, in an Answer amended pursuant to a motion granted on the date of trial, admitted an averment in the Complaint that this matter was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), involving "determinations of the validity, extent, or priority of liens." This characterization appears correct, allowing us to determine the matter.

The trial was conducted on April 25, 1989. The Plaintiff called two witnesses, Michael Rainone, a former officer of Princeton Bank (herein "the Bank") who closed the loan resulting in an alleged mortgage which was later assigned to the Plaintiff, and the Debtor. The Plaintiff himself chose not to testify. The Defendants called the Husband-defendant and Charles Boland, the realtor, and Michael Vallone, the title clerk at settlement, in the transaction in which the Premises was sold by the Defendants to the Debtor. (All witnesses are referred to hereinafter by their surnames). We requested post-trial Briefs from the parties on or before May 5, 1989 (Plaintiff), and May 12, 1989 (Defendants). Since there are several significant factual issues and pursuant to the terms of

---

1. Also named as a defendant in this proceeding is the Debtor. To the extent that the Debtor has any interest in this matter, he would appear to be allied with the Plaintiff, his cousin.

Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a), we are obliged to submit our decision in the form of findings of fact and conclusions of law. The latter are set forth in narrative form.

## B. FINDINGS OF FACT

1. On September 12, 1986, the Defendants, as sellers, and the Debtor, as buyer, executed an Agreement of Sale for the sale of the Premises for $130,000. This Agreement of Sale superseded an earlier similar Agreement of July 10, 1986, which the Plaintiff was unable to financially perform.

2. The terms of both Agreements of Sale provided that the Debtor would obtain a "2nd mortgage from sellers at settlement" in the amount of $20,000, which would be "a direct reduction fixed rate mortgage with a payment term of 30 years BALLOONING in 24 months"[2] against the Premises.

3. The Debtor obtained $16,000 from the Plaintiff, his cousin, secured by a mortgage on Benton Avenue, and applied for a loan at the Bank for $90,000 towards the purchase price. Rainone serviced the loan from the Bank.

4. The Plaintiff, a valued customer of the Bank, assisted the Debtor in obtaining the loan from the Bank. The Bank intended to take a mortgage in the Premises which it assumed would be the first and only mortgage against the Premises. However, subsequent events revealed that the Bank received assurances from the Plaintiff that he would stand by the Debtor's loan obligations and that this was the primary reason that the Bank entered into the loan transaction.

5. Rainone received a copy of the Agreement of Sale, but repeatedly testified that he did not notice the condition stating that the Defendants, the sellers, would retain any mortgage.

6. The loan between the Bank and the Debtor was closed, a mortgage in favor of the Bank was executed, and funds were disbursed to the Debtor on September 30, 1986, the day before settlement. Both the Debtor and the Plaintiff were present at the loan closing.

7. The mortgage, dated September 30, 1986, erroneously recites the address of the Premises as "*734* (as opposed to *743*) Maple Lane, Philadelphia, PA 19124," and also erroneously states that the Premises was conveyed to the Debtor on September 9, 1978, by a deed recorded on September 17, 1986, in Deed Book No. DCC 527, Page 125. A title report entered into evidence reflects that the premises was conveyed to the *Defendants* by a deed dated December 14, 1973, and recorded December 17, 1973, at Deed Book D.C.C. 527, Page 125, and that the Premises was deeded by the Defendants to themselves by a deed dated September 7, 1978, in Deed Book D.C.C. 1753, Page 219.[3]

7. On October 1, 1986, settlement was conducted, presided over by Vallone, with the Defendants, their attorney, the Debtor, the Plaintiff, and Boland, but no representative of the Bank, in attendance.

8. Vallone was presented with a $90,000 check from the Bank by the Debtor or the Plaintiff, with no explanatory documents. Since the failure of the Bank to appear or to provide documentation was, in his practice, unusual, Vallone called the Bank and spoke to Rainone before making settlement. Upon Rainone's allegedly "cavalier" statement that the loan was granted principally due to its confidence in the Plaintiff rather than any aspect of the transaction relative to the Debtor, Vallone felt that he had performed any responsibilities that he

2. Although the terms of this proposed mortgage, as thus recited, are unclear to us, the terms of the mortgage itself clearly provide for 23 monthly installments or $205.73 and a final installment of $20,051.19 due on or before October 1, 1988.

3. It is unclear why the conveyance of September, 1978, took place. It is also apparent that, in this transaction, the deed could not have been recorded before it was executed. We therefore have reason to question the accuracy of this title report. However, as neither this title report nor the September, 1978, transaction are of any relevance to the resolution of the instant matter, we need not dwell on these matters.

had to the Bank, and he completed settlement.

9. The Defendants' mortgage, left with Vallone at settlement, was recorded on October 17, 1986, without any notation qualifying it as a second mortgage.

10. The Bank's mortgage, which it left for recording through its own processes, was not recorded until November 17, 1986.

11. On April 20, 1987, when performing what Rainone characterized as a normal post-transaction title search, the Bank discovered, for the first time, that its mortgage was in second position. However, the Bank did nothing to attempt to rectify this situation, and Rainone indicated that the Bank was resigned to its mortgage's being in the second position.

12. The Debtor defaulted in payments to the Bank and to the Defendants.

13. On May 25, 1988, Mendelson, although fully aware of the second position of the Bank's mortgage, paid the full amount of principal and interest due on the Bank's loan, and obtained an assignment of the Debtor's obligation and mortgage to the Bank.

14. Neither the Debtor nor the Defendants were individuals who had any degree of sophistication in real estate transactions, and hence they did not clearly understand the terms of this transaction. The Agreement of Sale was drafted by Boland and the Defendants' counsel and the Bank loan was negotiated principally by the Plaintiff.

## C. CONCLUSIONS OF LAW/DISCUSSION

Two Pennsylvania statutes appear relevant to the issue of the priority of the instant mortgages. The first, cited by the Defendants, is 42 Pa.C.S. § 8141, which reads in pertinent part as follows:

§ 8141. Time from which liens have priority

Liens against real property shall have priority over each other on the following basis:

(1) Purchase money mortgages, from the time they are delivered to the mortgagee, if they are recorded within ten days after their date; otherwise, from the time they are left for record. A mortgage is a "purchase money mortgage" to the extent that it is:

(i) taken by the seller of the mortgaged property to secure the payment of all or part of the purchase price; or

(ii) taken by a mortgagee other than the seller to secure the repayment of money actually advanced by such person to or on behalf of the mortgagor at the time the mortgagor acquires title to the property and used by the mortgagor at that time to pay all or part of the purchase price, except that a mortgage other than to the seller of the property shall not be a purchase money mortgage within the meaning of this section unless expressly stated so to be.

(2) Other mortgages and defeasible deeds in the nature of mortgages, from the time they are left for record. . . .

The second statute, not referred to by either party, is 21 P.S. § 654, which reads in pertinent part as follows:

§ 654. Agreement postponing lien of mortgage

In every case where a mortgage has been or shall hereafter be made and recorded in the proper office in the county in which the land mortgaged is situated, it shall be lawful for the mortgagee or mortgagees, . . . to postpone the lien of such mortgage or mortgages on the mortgaged premises, and the bond or bonds accompanying the same, to the lien of a subsequent mortgage or mortgages, and the bond or bonds accompanying the same, on the same mortgages premises, (a) by entering a postponement upon the margin of the record of, and the names of the parties to, the subsequent mortgage or mortgages to which mortgage or mortgages the said entry of postponement is intended to subordinate the lien of the mortgage or mortgages to be postponed, which postponement shall be signed by the person or persons who are then the owner or owners of the said mortgage or mortgages so postponed,

and which postponement, when attested by the recorder of deeds, shall be a part of the record of said mortgage, and shall be notice to all persons of the facts therein contained; or (b) by a stipulation contained in the body of the mortgage postponing the lien thereof to the lien of another mortgage or mortgages about to be recorded; or (c) by an agreement in writing with the mortgagor and with the subsequent mortgagee or mortgagees and any other person interested as owners of the mortgaged premises or a holders of liens thereon, duly acknowledged before a proper officer authorized by the State of Pennsylvania to take acknowledgements; which said agreement for the postponement of lien of mortgage and bond accompanying the same shall be recorded in the office of the recorder of deeds in the county where the mortgaged premises lie, ...; the recording of which shall be notice to all persons of the facts therein contained, when and only when a memorandum of the said agreement shall be noted by the said recorder of deeds upon the margin of the record of the mortgage or mortgages to be postponed, giving the book and page wherein any such postponement agreement is recorded, together with the date of such recording....

We are obliged to follow the law as interpreted by the highest court of the Commonwealth of Pennsylvania, its Supreme Court, in deciding this case. *See, e.g., In re Frymire*, 96 B.R. 525, 534 (Bankr.E.D.Pa. 1989). Decisions of that Court, consistent with these statutes, have established that: (1) The priority of mortgages is generally established by which mortgage is left for recording first, with the first in time having priority. *See Woods's & Brown's Appeal*, 82 Pa. 116, 118 (1876); and *Brooke's Appeal*, 64 Pa. 127, 129–30 (1870). *Cf. Gosser v. Yohn*, 67 Pa.Super. 521, 522–23 (1917); and (2) A notation in the margin of a recorded mortgage, a stipulation in the body of a mortgage, or a recorded written agreement among the mortgagor and the mortgagees may "postpone" or subordinate the lien of an otherwise prior mortgage to another lien or mortgage. *See Landau v. Western Pennsylvania Nat'l Bank*, 445 Pa. 217, 222–23, 282 A.2d 335, 338–39 (1971); *G.A.G. Corp. v. Auritt*, 226 Pa.Super. 118, 120–22, 129–30, 312 A.2d 441, 443–45, 448 (1973) (subordination agreements);[4] and *Thomas v. Equitable Bldg. & Loan Ass'n*, 215 Pa. 259, 261–62, 64 A. 531, 532–32 (1906) (stipulation in body of mortgage).

■ In the instant factual situation, the Defendants' mortgage was left for recording a considerable period prior to the time that the Bank's mortgage was left for recording. There was no document recorded which indicated that the Defendants' mortgage would be subordinated to any other mortgage, nor did the Defendants' mortgage recite any subordination agreement in its text. Nor was there any *unrecorded* subordination agreement or a document of like effect executed by the mortgagor and all of the mortgagees. Therefore, it would clearly seem that the Defendants are entitled to prevail without further analysis.

■ However, this conclusion is drawn into question by the decision of the Pennsylvania Superior Court in *Farmers Trust Co. v. Bomberger*, 362 Pa.Super. 92, 523 A.2d 790 (1987). In that case, a bank's mortgage, while recorded prior to a seller's mortgage, would have been junior to the seller's mortgage by reason of 42 Pa.C.S. §§ 8141(1)(ii), (2), because "[a]s a result of mutual mistake," 362 Pa.Super. at 95, 523 A.2d at 792, the bank's mortgage failed to contain the requisite language designating it as a purchase money mortgage. Only the terms of a "supplemental agreement," the nature of which is not further described in the Opinion, but "in reliance" of which the bank is held to have acted in making its loan, *id.*, recited that the seller's

---

**4.** Although the subordination agreements in issue in these cases were apparently not recorded, they were nevertheless deemed enforceable as to the parties to the agreements themselves without the necessity of recording. *Cf. In re* *Aikens*, 83 B.R. 344, 347 (Bankr.E.D.Pa.1988); and *In re Chandler*, 76 B.R. 460, 463–64 (Bankr. E.D.Pa.1987) (a judgment not indexed or revived properly is nevertheless valid as to judgment debtor).

"pure" purchase-money mortgage was to be junior to the bank's mortgage. Impressed by the equities in favor of the bank ("The seller will not be permitted to take advantage of a mistake in drafting the mortgage documents to gain for himself an unintended windfall," 362 Pa.Super. at 100, 523 A.2d at 794), the Superior Court reversed and remanded a lower court order granting summary judgment to the seller. The lower court decision had been based on the ground that the bank was equitably estopped "because it had waited too long to correct" the recording error which left it in the second position. 362 Pa.Super. at 96, 523 A.2d at 792. The Superior Court was critical of the lower court's invocation of equitable estoppel, since the parties appeared equally aware of the facts and the seller was not misled by the bank's delay in attempting to correct the mistake. 362 Pa. Super. at 99, 523 A.2d at 794.

Several distinctions can be made between the instant fact situation and that in *Farmers Trust.* First, the "supplemental agreement" was found to have been relied upon by the bank in giving its mortgage in the transaction. Here, Rainone admitted that the terms of the Agreement of Sale relative to mortgage priorities were not known to the Bank at the time of the making of the loan.

However, further, we cannot tell what, precisely, the "supplemental agreement" was.[5] If it was not a document within the scope of 21 P.S. § 654, we frankly question the Superior Court's analysis for several reasons. *See Sprague, Levinson & Thall v. Advest, Inc.,* 623 F.Supp. 11, 14 (E.D. Pa.), *aff'd,* 780 F.2d 1016 (3d Cir.1985); and *Frymire, supra,* 96 B.R. at 534 (decisions of the Superior Court are only predictions of what the Supreme Court might hold, which need not necessarily be followed by federal courts). First, we note that an agreement of sale merges with a deed and rights accorded in such an agreement are forever lost if not reiterated in the deed, or, in this situation, in the mortgage or another document within the scope of 21 P.S. § 654. *See Elderkin v. Gaster,* 447 Pa. 118, 124 n. 11, 288 A.2d 771, 774 n. 11 (1972); and *Stoever v. Gowen,* 280 Pa. 424, 432, 124 A. 684, 686–87 (1924).

Secondly, we note that the Bank here was not a *party* to the Agreement of Sale containing the Defendants' agreement to take a second mortgage which is the only basis of the Plaintiff's case. We also question whether the Bank could successfully argue that it is a third-party beneficiary of the Agreement of Sale. Under Pennsylvania law, a third party can assert beneficiary status only if (1) the parties to a contract intend to provide rights to the third party, and (2)(a) the performance satisfies an obligation of the promise to pay money to the beneficiary, or (b) the circumstances indicate that the promisee intended to give the beneficiary such rights. *See Guy v. Liederbach,* 501 Pa. 47, 58–61, 459 A.2d 744, 750–51 (1983); and RESTATEMENT (SECOND) OF CONTRACTS, § 302, at 439–40 (1979). We perceive no evidence of an intention of the parties to the Agreement of Sale to benefit the Bank thereby. The purpose of the Defendants' agreement to take a second mortgage was apparently to make it easier for the Debtor to obtain financing for the balance of the purchase

5. The Plaintiff's counsel seeks to answer this question by improperly attaching a copy of an "Agreement" of sale and an "Amendment to Agreement" from the record on the *Farmers Trust* case to her Brief. We cannot condemn such an attempt to improperly influence the court by matters not included in the record too strongly. We *do* note, however, that the Defendants' counsel took this action as a cue to attach to *his* Brief a "copy of Recorder of Deed Entries" and the Assignment of the Bank's mortgage to the Plaintiff, which were also not part of the record in this proceeding. This conduct was also improper, although perhaps somewhat less egregious because it did not attempt to bring in matters from an entirely independent proceeding, as did the actions of the Plaintiff's counsel.

We cannot and will not consider any of these documents not of record in reaching our decision. We do observe that the "Amendment to Agreement," which the Plaintiff contends is the "supplemental agreement," addresses *only* the issue of the bank's taking a first mortgage, and is therefore directed specifically to the priority issue. This factor would appear to make the bank's potential third-party beneficiary argument stronger there than the argument that could be made on this issue on behalf of the Bank here.

price. There was no apparent intention to benefit a prospective lending institution. As we indicate elsewhere, it appears that the Bank relied principally on the Plaintiff's involvement in the transaction, not the priority of its mortgage, in agreeing to participate in the transaction. There is certainly no satisfaction of an obligation of the Debtor to pay money to the Bank in the Agreement of Sale. The circumstances do not, like that of the beneficiaries of the will in issue in *Guy*, indicate an intention of the contracting parties to give rights to the Bank against the Defendants or to anybody other than themselves. *Cf. Williams v. Virgin Islands Water & Power Authority*, 672 F.2d 1220, 1227–28 (3d Cir.1982). Therefore, we fail to see how the terms of the Agreement of Sale can be successfully asserted by the Plaintiff, seeking to stand in the shoes of the Bank, as practically the sole support for his case.

It is possible that the "supplemental agreement" in *Farmers Trust* was an agreement of sale not in the alternative forms recited in 21 P.S. § 654 and that the court somehow overcame these difficulties.[6] However, these issues are not discussed in the *Farmers Trust* opinion and we are at a loss as to how they could have been easily overcome. They may have never been raised and may have been simply overlooked by the court in its efforts to reach an equitable result on the facts before it.

However, we also note that this case is clearly distinguishable from *Farmers Trust* on other grounds, notably because the equities in favor of the Plaintiff here are far fainter than those in favor of the bank there. The Bank here did not act "in reliance" of the terms of the Agreement of Sale restricting the Defendants to a second mortgage. Rather, it is apparent that the Bank here was unconcerned about its mortgage and the position it would take, because it believed, correctly as it developed, that the Plaintiff would protect it from suffering any financial loss on the loan if its position became jeopardized. Whether Rainone was "cavalier" in his discussion

with Vallone (which Rainone rather conveniently could not recall at all) is perhaps debatable. However, it is not debatable that the Bank treated the mortgage as if it were of no great significance. Rainone never read the Agreement of Sale which should have alerted him to the priority problem. No Bank representative appeared at settlement to protect its rights. The mortgage was executed and dated prior to the Debtor's acquiring title to the Premises. It delayed in recording its mortgage for over six weeks. *And* it drafted a mortgage so laden with errors that the Defendants, not without basis, have questioned the validity of the entire mortgage.

As to this last issue of validity of the mortgage, we note that a contract in which rights in real property are purportedly acquired must contain a "sufficiently specific and definite" description of the property involved to be valid. *Snow v. Corsica Construction Co.*, 459 Pa. 528, 533–37, 329 A.2d 887, 888–91 (1974). *See also In re Hoffa*, 17 B.R. 699, 700 (Bankr.E.D.Pa. 1982); *O'Connell v. Cease*, 267 Pa. 288, 291–93, 110 A. 266, 267 (1920); and *Hunter v. Hunter*, 20 Pa.D. & C. 3d 96, 98–99 (Cumberland Co.C.P.1981). While a correct address or reference to another document will save an otherwise defective instrument, we note that the mortgage here contained both a transposed and therefore incorrect street address *and* a conglomeration of totally erroneous references to other deeds, recordings and book numbers. Because other grounds exist for reaching our result in favor of the Defendants, we need not and do not rest upon the invalidity of the Plaintiff's mortgage as a basis for our decision. The Trustee may well wish to challenge the validity of this mortgage, however, pursuant to 11 U.S.C. § 544(a), thereby possibly reducing the Plaintiff's status as a creditor to not only that of junior to the Defendants, but entirely unsecured. *Cf. In re Allenwear Associates, Inc.*, 89 B.R. 531, 533 (Bankr.E.D.Pa.1988); and *In re Duffy–Irvine Associates*, 39 B.R. 525, 527–30 (Bankr.E.D.Pa.1984).

---

**6.** *But see* page 226 n. 5 *supra.*

One other basis not present in *Farmers Trust* also supports a decision contrary to the Plaintiff here. The Plaintiff was himself an active participant in the transaction in which the Premises was purchased and financed. In a portion of his deposition admitted into the record, the Plaintiff admitted that *he*, if not the Bank, *knew* the terms of the Agreement of Sale. He was also present at settlement and aware that only the Defendants' mortgage was presented to Vallone for recording. He took other mortgages against the Debtor's residence to protect his further investments in the sale transaction. Except for perhaps the Debtor, who consistently deferred to him in handling the transaction, he was the only person who had at his disposal sufficient facts to ascertain, at the inception of the transaction, the dispute which ultimately resulted as to the priority of the mortgages. Yet he did nothing to alert any of the other parties to the problem.

The Plaintiff also admitted that he was aware of the recordation priority of the Defendants' mortgage and the resignation of the Bank to a second position *prior* to obtaining his assignment of the Bank's mortgage. His payment of full value to the Bank under these circumstances is highly suggestive of an understanding that he would guarantee the Debtor's loan despite the absence of documentation for same. Therefore, the equities of the Plaintiff as an insider-assignee, in relation to the Defendants, who were not privy to his involvement or understanding of all aspects of the transaction, are significantly less than those of the bank in *Farmers Trust* relative to the seller there, or even the Bank here relative to the Defendants.

From a legal perspective, the notice to the Plaintiff of the weakness of the Bank's position, prior to taking the assignment, undermine his status as a bona fide purchaser. *See First National State Bank v. Reliance Electric Co.*, 668 F.2d 725, 729 (3d Cir.1981); and 6 AM.JUR.2d 287 (1963). Therefore, he may be subject to the defense that he knowingly accepted a position second to the Defendants and is bound to it.

We therefore conclude that the cumulative effect of (1) the Plaintiff's lack of bona fide purchaser status; (2) the defects in the mortgage under which he claims; and (3) the absence of enforceable rights of his assignor against the Defendants under the Agreement of Sale which is the sole wellspring of its rights, erodes any attempt on the part of the Plaintiff to avoid the applicability of the statutory dictates of 42 Pa.C. S. § 8141 and 21 P.S. § 654. For all of the foregoing reasons, we will proceed to enter an order rendering judgment in favor of the Defendants, declaring that their mortgage is prior to that of the Plaintiff.