J-A10011-16

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE:  ESTATE OF MARY D. FRANO, NOREEN M. SWANSON, ELAINE B. WEHNER GACZKOWSKI, BEVERLEY J. FRANO BURKETT AND GORDON F. FRANO, CO-EXECUTORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  ELAINE B. WEHNER GACZKOWSKI, BEVERLEY J. FRANO BURKETT AND GORDON F. FRANO, REMAINING LIVING CO-EXECUTORS OF THE ESTATE OF MARY D. FRANO | No. 555 WDA 2015 |

Appeal from the Order March 4, 2015
In the Court of Common Pleas of Clearfield County
Orphans' Court at No(s): No, 95-284 O.C.

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 22, 2016**

Appellants, the remaining co-executors of the estate of Mary D. Frano ("the Estate"), appeal from the order directing them to transfer ownership of real estate located in Clearfield County to Appellee, Eagle Environmental, L.P. ("Eagle"). Eagle petitioned the orphans' court to enforce a judgment from 1999 compelling specific performance of an option to purchase real estate that it had purchased from Mary D. Frano before she passed away. The orphans' court engaged in a detailed, well-reasoned analysis of the circumstances and extensive legal history of this case and concluded that the doctrine of laches was not available as an equitable defense to Eagle's

petition to enforce a judgment entered in 2001. Among several other arguments, Appellants contend that the orphans' court erred in concluding that the doctrine of laches did not apply. While the orphans' court's 1999 order and this Court's 2000 affirming memorandum speak of judgment in favor of Eagle, the true effect of the 1999 order, as revealed by the 2000 memorandum and the subsequent actions taken by Eagle, was in the nature of a declaratory judgment providing the legal rights and responsibilities of the parties under the controlling option agreement. We therefore vacate the orphans' court's order in part and remand for the orphans' court to consider whether equity favors the application of laches to Eagle's claim.

In 1993,[1] Mary D. Frano granted Eagle an option to purchase approximately 150 acres of real estate in Washington Township. Among other purposes, Eagle intended to build and operate a solid waste disposal facility on the property. To that end, the agreement provided that if Eagle exercised the option, the total purchase price would be $270,000 and that Mary Frano was obligated to provide "good and marketable title" to the property.

---

[1] There are references in prior court orders in this case to option agreements dating back to 1990. However, all parties agree that it is the 1993 agreement and its subsequent addendum that governed the rights of the parties at the time that Eagle sought to exercise the option to purchase the property.

On January 13, 1995, Mary D. Frano executed an addendum to the option agreement, extending the option period for an additional twelve months. Shortly thereafter, she passed away. On January 8, 1996, Eagle gave notice of its intent to exercise the option to purchase the property.

After Mary D. Frano's death, the original co-executors, her four children, discovered that some of the property subject to the option was actually located in Sandy Township. This created an issue, as the portion in Sandy Township was smaller than the minimum lot size permitted in the Sandy Township land use ordinances. Furthermore, the co-executors claimed that in 1991, Mary Frano had deeded another portion of the property subject to the option to her daughter, and now co-executor, Beverley J. Frano Burkett, and her husband. The co-executors asserted that after Mary Frano had discovered this mistake, she and Eagle had orally modified the option agreement.

The Estate therefore filed a complaint for declaratory judgment in Jefferson County to determine their rights. Eagle filed a demurrer to this complaint, asserting that the Estate had failed to state a valid cause of action. The Jefferson County Court of Common Pleas agreed with Eagle, and entered an order dismissing the Estate's complaint. The Estate did not appeal from the Jefferson County order.

In the meantime, Eagle had filed a petition seeking specific performance of the option contract in the Court of Common Pleas of

Clearfield County. The Clearfield County action was stayed until the resolution of the Jefferson County proceedings. After the Jefferson County court dismissed the Estate's complaint, Eagle filed a motion for judgment on the pleadings in its Clearfield County action. The Clearfield County court found that the Jefferson County decision was *res judicata* on the issues involved, and granted judgment on the pleadings to Eagle and granted Eagle's request for specific performance.

The co-executors appealed the Clearfield County decisions. On March 6, 2000, this Court affirmed the Clearfield County decisions. Importantly, the panel provided the following analysis relevant to the current appeal:

> Approximately one acre of the nearly 150 acres of the option property is located in Sandy Township. Appellants [co-executors] contend that subdivision of the Sandy Township property is illegal because it does not comply with the minimum lot size requirements under the Sandy Township Subdivision Ordinance. Appellants admit that they do not know whether Sandy Township will grant subdivision of the property. In addition, there is nothing in the record indicating that the co-executors have applied for subdivision approval. To comply with the trial court's order and judgment in favor of Eagle, and to perform the option agreement, the co-executors must first seek subdivision approval. Sandy Township may or may not approve the subdivision, and it may or may not grant a modification or variance. Nonetheless, we find that the co-executors here can lawfully comply with the provisions of the option agreement regardless of Sandy Township's eventual determination. … Thus, the co-executors here must seek subdivision approval, apply for a modification or variance if necessary, and otherwise comply with the provisions of the option agreement and the order of the trial court. **If subdivision approval, or a modification or variance, is not granted, and the co-executors cannot convey good title to that portion of the property located in Clearfield County, then Eagle must decide whether to take**

- 4 -

> **title to property the co-executors are able to convey, or rescind the agreement**.

*In re: Estate of Mary D. Frano*, No. 682 WDA 1999, at 10-11 (Pa. Super., filed 3/6/00) (unpublished memorandum) (emphasis supplied). The Supreme Court of Pennsylvania denied review.

The case returned to the orphans' court. Eagle continued to pursue its remedies under the option agreement, without any apparent cooperation from the Estate. On March 21, 2001, the orphans' court entered the following order:

> [F]ollowing status conference into the above captioned matter, **and upon agreement of the parties**, it is the ORDER of this Court that Eagle Environmental, L.P., shall post with the Clerk of the Orphans' Court of Clearfield County the sum of $110,000 representing 50% of the purchase price of the subject premises to be placed by said Clerk in an interest bearing account until further Order of Court. It is the further ORDER of this Court that the Mary Frano Estate shall submit, within 30 days from the date hereof, to the Planning Commission of Sandy Township, Clearfield County, and Washington Township, Jefferson County, sub-division applications for the subject premises. Finally, Eagle Environmental, L.P. shall submit to the Mary Frano Estate an engineering survey of the rock storage area and of the proposed ingress and egress road to and from the same within five days from date hereof.

(emphasis supplied).

Eagle deposited the sum of $110,000 into an interest bearing account held by the clerk of the orphans' court of Clearfield County. The Estate eventually submitted the required documents, but Eagle objected to the documents submitted. Eagle was subsequently granted the right to pursue the subdivision application and zoning variance on behalf of the Estate in

Washington Township, with the Estate directed to comply with all requests made by Eagle.

Eagle was similarly nonplussed with the documents the Estate submitted to Sandy Township. The orphans' court subsequently ordered the Estate to submit a revised zoning variance application that met Eagle's requirements.

Washington Township denied Eagle's request for subdivision of the property on October 9, 2001. Sandy Township denied Eagle's request for a zoning variance on January 28, 2002. While Eagle appealed the Washington Township decisions to the Jefferson County Court of Common Pleas, it did not pursue any appeal of the Sandy Township decision.

In the following years, Eagle determined that its plan to build a solid waste disposal facility on the optioned property was no longer feasible and abandoned this intent. On June 6, 2005, the Jefferson County Court of Common Pleas dismissed Eagle's appeal from the Washington Township decisions for lack of activity. Eagle did not appeal from this order. Nor did Eagle take any steps to consummate its purchase of the optioned property.

In 2013, the Clearfield County Court of Common Pleas notified Eagle that the $110,000 that Eagle had deposited with the Orphans' Court would be forfeited to the state treasury if no activity occurred within 60 days. Eagle responded on October 21, 2013, with a petition seeking to compel the Estate to convey the portion of the optioned property located in Washington

Township. The Estate responded, raising a litany of defenses. Of factual significance is the intervening discovery of Marcellus Shale underneath the optioned property, and the Estate's recorded entry of leases to develop this resource.

After holding a hearing, the orphans' court entered an order directing the Estate to cooperate with Eagle in filing a subdivision application in Washington Township. Furthermore, the Estate was ordered to convey the subdivided property to Eagle in return for the purchase price pursuant to the option contract. The Estate filed post-trial motions, which the orphans' court denied, and this timely appeal followed.

Our standard in reviewing decisions of the orphans' court is as follows:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or

misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence [of] record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.

We are not constrained to give the same level of deference to the orphans' court's resulting legal conclusions as we are to its credibility determinations. We will reverse any decree based on palpably wrong or clearly inapplicable rules of law. Moreover, we are not bound by the chancellor's findings of fact if there has been an abuse of discretion, a capricious disregard of evidence, or a lack of evidentiary support on the record. If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Paxson Trust I*, 893 A.2d 99, 112-113 (Pa. Super. 2006) (citations and quotation marks omitted)

On appeal, the Estate raises three issues. However, we need only address the Estate's first issue, as its resolution requires a remand to the orphans' court. The Estate contends that the orphans' court erred in concluding that the defense of laches did not apply in this case.

The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared. In order to apply the doctrine to bar prosecution of a stale claim, the following elements must be demonstrated: (1) a delay arising from [plaintiff's] failure to exercise due diligence; and (2) prejudice to the [defendant] resulting from the delay.

*Kern v. Kern*, 892 A.2d 1, 9 (Pa. Super. 2005) (citations omitted).

The orphans' court noted the complexity of the issue of application of laches under the circumstances of this case:

Notwithstanding diligent research, the [c]ourt has been unable to find a case where the doctrine of laches was upheld as the basis to void a previously entered judgment or final order in equity. Any cases located by the [c]ourt or cited by the parties involve laches being applied to a suit filed to attempt to enforce an agreement or contract. Thus, it appears a matter of law that laches is not available where a matter has been fully litigated resulting in an enforceable judgment. This [c]ourt has struggled with this issue, as common sense would seem to indicate that at some point enough time would have passed where some doctrine of delay would negate Eagle from attempting to enforce the judgment which it had already obtained to force a deed from the Estate. Here the period of delay is either eight (8) years or twelve (12) years, depending upon which way you look at it. If this [c]ourt had not brought the issue to the attention of Eagle, who knows how many years may have passed with nothing occurring. So the question is, how many years are too many[?] Is ten (10), twenty (20), or fifty (50) or more? In the alternative, does the Estate have to wait for twenty-one (21) years to pass and make a claim for adverse possession? This [c]ourt cannot answer these questions. However, the case law appears to be clear that the doctrine of laches is not applicable where a matter was fully litigated resulting in a vested equitable title to the claimant. This [c]ourt holds as such and rules that laches does not apply in this case.

Orphans' Court Opinion, 2/20/15, at 12-13.

We agree with the orphans' court that the issue of the availability of the defense of laches to an action seeking enforcement of a judgment is at best murky. We cannot agree, however, that case law clearly makes laches inapposite to the present case. It is well established that a court will not order specific performance of a contract if such performance violates applicable law. *See Messina v. Silberstein*, 528 A.2d 959, 961 (Pa. Super.

1987). *See also Holden v. Kay*, 601 A.2d 453, 455 (Pa. Cmwlth. 1991). Nevertheless, a court can order specific performance pending approval of a subdivision application. *See id*.; *Silberstein*.

Here, though, we are not faced with a situation where approval was pending. The subdivision applications and zoning variance applications were in fact denied by the various relevant authorities. Thus, specific performance of the contract became illegal the moment the subdivision and zoning variance applications were denied.[2] At that time, Eagle's rights were, as noted, clearly spelled out by this Court's March 6, 2000 decision:

> If subdivision approval, or a modification or variance, is not granted, and the co-executors cannot convey good title to that portion of the property located in Clearfield County, then Eagle must decide whether to take title to property the co-executors are able to convey, or rescind the agreement.

Thus, the burden was upon Eagle to choose its remedy at that point in time. It is uncontested that Eagle took no action to pursue either remedy until 2013.

Under these circumstances, it is clear that Eagle has slept on its right to choose a remedy in this matter. However, it is not clear from the record before us that the Estate is entitled to relief under this doctrine. Equitable relief is a matter of discretion in the orphans' court, and must be exercised

---

[2] While Eagle appealed from the Washington Township decisions, it later abandoned the appeals and therefore those decisions stand as final adjudications on the applications.

only upon a consideration of all the attendant circumstances. *See Snow v. Corsica*, 329 A.2d 887, 889 (Pa. 1974). As noted, the orphans' court grappled with this issue, but ultimately concluded that laches was not available as a matter of law.[3] Furthermore, it is clear from this record that the Estate has, at times during the pendency of this matter, also acted in an obdurate manner. Resolution of the issue of prejudice and the balance of equity in this case is within the discretion of the orphans' court, not this Court.

We therefore vacate the order in part, and remand for the limited purpose of consideration of whether the Estate was prejudiced by Eagle's delay, and whether such prejudice is sufficient to tip the equities involved in the Estate's favor.

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

_____

[3] The orphans' court does conclude, in its opinion and order, that the Estate did not establish that Eagle's delay prejudiced the Burketts with respect to their claim of ownership to a portion of the option property. We can find no fault in the orphans' court's reasoning on this issue, and therefore affirm its decision to this extent. Our remand is limited to the issue of whether the Estate as a whole was prejudiced by Eagle's failure to diligently prosecute its rights under the option contract after subdivision approval and zoning variance were denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/22/2016</u>